CASE 11—PETITION EQUITY—APRIL 17.

# Kreiger v. Shelby R. R. Co., &c.
## Same v. Same.
# Same v. Shelby Railroad District of Shelby County, &c.

APPEALS FROM SHELBY CIRCUIT COURT.

1. CORPORATIONS—TAXING DISTRICT OF COUNTY A STOCKHOLDER.—A district or portion of a county empowered by the charter of a railroad company to vote a subscription of stock to aid in the construction of the road, and, through the county judge, to issue its bonds in its name and under its seal or scroll, *in payment* of the subscription, was thereby created a corporation, and the subscription having been voted and the bonds issued, no other provision was required to enable the taxing district to become a stockholder in the railroad company, with the power to vote its stock and receive dividends thereon. The district, however, will be deprived of its right to vote the stock or receive the dividends to the extent that the principal of the bonds may be reduced by the tax-payers.
2. CONSTITUTIONAL LAW—TITLE OF ACT.—Certain Acts of the Legislature referred to in the opinion are not unconstitutional by reason of defective titles.

## STATEMENT OF FACTS.

A dispute having arisen between the "Shelby Railroad District of Shelby county" and Jacob Kreiger and other individual stockholders of the Shelby Railroad Company as to the right of the district to hold or vote shares of stock in the Railroad Company, or receive dividends thereon, the president and directors of the Shelby Railroad Company filed a petition in the name of the company, making the district and the objecting stockholders defendants, asking, in substance, that the defendants interplead, and have the dispute settled.

Jacob Kreiger, for himself and other stockholders, then brought an action, in which an injunction was issued, restraining the voting of any stock by the district at a stockholders' meeting, soon to occur, or the payment of dividends to the district on such stock.

The Shelby Railroad District of Shelby county then brought suit, and enjoined the holding of any election for directors or the pay-

ment of any dividends until the matters in litigation could be determined, with a prayer for judgment on final hearing that it. was a stockholder and entitled to dividends on its stock.

These three actions were consolidated, and, on final hearing, the Shelby Circuit Court adjudged that the Shelby Railroad District of Shelby county was entitled to hold and vote stock and to receive. dividends thereon.

From that judgment Jacob Kreiger appeals.

The act of February 3, 1869, referred to in the opinion, is entitled "An act to amend the charter of the Shelbyville Railroad Company, and to authorize certain counties to take stock in the same."

The act of March 11, 1870, referred to, is entitled "An act to amend an act, entitled 'An act to amend the charter of the Shelby-. ville Railroad Company, and to authorize certain counties to take stock in the same.'"

Other facts are stated in the opinion.

A. BARNETT for appellant.

The act of February 3, 1869, confers no authority upon the Shelby Railroad District of Shelby county to hold or vote stock in the Shelby Railroad Company, or to receive dividends thereon. Such a right never exists in a municipality or quasi municipality unless secured by express language.

SAME COUNSEL in petition for rehearing.

1. The act of February 3, 1869, embodies the whole contract between the individual stockholder and the tax-payers of "that portion of Shelby county" described in the act, and no new stipulation can be inserted into it by subsequent legislation without impairing the obligation of that contract.

2. The "portion of Shelby county" described in the act has none of the attributes of a corporation or quasi corporation, taking any definition of either known to law writers. (2 Kent's Com., 215; 4 Wheaton, 636; 4 Peters, 562; Angell & Ames on Corporations, sections 2, 3, 4, etc.; Potter, volume 2, page 490.) ·

3. Contracts conferring vested property rights can not be disturbed by subsequent legislation. (Commissioners, &c., v. Green & Barren River Nav. Co., &c., 79 Ky., 82; Sage v. Dillard, 15 B. Mon., 355; Louisville v. University, 15 B. Mon., 669; L., C. & L. R. R. Co. v. Commonwealth, 10 Bush, 47; Covington v. Bridge Co., 10 Bush, 74.)

L. A. WEAKLEY on same side.

1. Municipalities can not hold stock in public or private enterprises except under express law. The grant of power must be clear and free from ambiguity.

2. If the power was given to the county to take and hold stock, the power

was to cease whenever certificates were or *could be* issued to tax-payers. The county is but the trustee, and her holding must be in trust.

3. The prohibition contained in section nine upon the county voting stock for which certificates may be issued to tax-payers applies to all the stock issued under the act.

4. If the county was ever entitled to stock, its stock has been retired, the bonds having been retired and being no longer binding on the county.

HARGIS & EASTIN AND BARNETT, NOBLE & BARNETT OF COUNSEL ON SAME SIDE.

BULLOCK & BECKHAM AND RUSSELL & HELM FOR SHELBY RAILROAD COMPANY, AND BULLOCK & BECKHAM AND PRYOR J. FOREE FOR SHELBY RAILROAD DISTRICT OF SHELBY COUNTY.

By the original subscription the Shelby Railroad District of Shelby county became a stockholder in the Shelby Railroad Company to the amount of three hundred thousand dollars, paid for with its bonds, and to the extent of the principal of those bonds still outstanding it is still a stockholder. Owning stock, the right to vote it and receive dividends upon it follows as a necessary sequence.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The original charter incorporating the Shelby Railroad Company, approved on the 15th of March, 1851, was amended by an act, approved February 3d, 1869, and from that amendment, or its construction, has arisen the present litigation.

By this amendment the company was authorized to extend its road through other counties, as well as the county of Shelby, and by the second section of the amendatory act a portion of the county of Shelby was laid off by a well defined boundary, and the legal voters within that boundary empowered to vote a subscription of stock, not exceeding three hundred thousand dollars, to aid in the construction of the road.

The vote was taken favoring the enterprise, and

the subscription made by the county judge in accordance with the provisions of the act. Bonds were required to be issued, payable in twenty years, bearing interest at a rate not exceeding eight per cent., with the right reserved of paying them within three years from date. The bonds were required to be executed *in the name of, and under the seal or scroll of, this portion of Shelby county*, and to be signed by the county judge, and countersigned by the county clerk, and when executed the bonds were to be "delivered to the president and directors of the railroad company *in payment* of said subscription, and they may be by them negotiated, hypothecated or sold, upon such terms as may by said president and directors be deemed expedient, and may be transferred by indorsement."

These bonds were executed and delivered, and then sold by the company, and the proceeds applied to the building of the road. The road was completed from Anchorage, on the Louisville & Lexington road (now the Louisville & Nashville road), to the town of Shelbyville, a distance of eighteen miles.

Under the seventh section of the act of 1869 an annual tax was levied on all the property in the district subject to taxation for State revenue to pay the interest when due, and the principal at maturity, and this tax has been collected from year to year in payment of the interest, and in part discharge of the principal.

The collecting officer is required by the express provisions of the act "to execute to each person a receipt for the amount of taxes paid by him, which

shall be assignable, and when they amount to fifty dollars or more shall entitle the holder, upon presentation to the proper officers of the company, to certificates of stock, at the rate of one share for fifty dollars and every multiple of fifty."

The ninth section of the act provides that "the several counties and portions of counties shall not vote the stock for which certificates may be issued to the tax-payers, but the same shall be voted by the individual stockholders."

The officers of this corporation being elected by the stockholders, it is claimed by the appellants, Kreiger and others, who are individual stockholders, that this district voting the tax is not a stockholder in the company, and, therefore, has no voice in the selection of its officers, nor any right to receive dividends declared; that, so far as the district is concerned, the individual tax-payer residing therein, when he has paid his taxes and obtained a certificate of stock, to that extent is entitled to vote, but no further; and this, it is insisted, is the only manner in which the district can be heard in the selection of the officers of the company, and in the distribution of the dividends. These three consolidated cases each involve this question.

It is claimed that the appellants have purchased the receipts of the tax-payer or his certificates for a trifling sum, and are, therefore, endeavoring to obtain the power to control the corporation.

Whatever may have been the motives influencing the appellants, the tax receipts are made assignable, and this case must be treated as a controversy

between the tax-payer and stockholder on the one side and the taxing district on the other.

It is apparent that at the completion of the road the stock was of but little value, and so continued for a number of years, yielding no dividend and giving no indications of a profitable investment. Shortly before the institution of the present action a small dividend (perhaps two) was declared by the company, and this seems to have called the attention of the officers of the company and the stockholders to the necessity of having the charter construed with a view of ascertaining who had the right to vote the stock and receive dividends.

Prior to the payment of these dividends the district had been voting its stock to the amount of three hundred thousand dollars, and while this may indicate the construction placed upon the act by many of the parties in interest, we can not well see why it should work an estoppel on the stockholders, or compel such a construction of the charter if inconsistent with its provisions.

The facts conduce to show that as much as three hundred thousand dollars has been paid by the tax-payers in the way of interest, and for this reason it is maintained that no right exists in the district to vote the original stock subscription. If three hundred thousand dollars have been paid by way of interest that by the terms of the charter can be converted into stock, it then follows that when this is added to the original subscription of three hundred thousand dollars, that the district and the tax-payers had stock, or were entitled to stock at the time

of these actions, amounting in all to the sum of six hundred thousand dollars, and may have greatly more, as the bonds have not yet fully matured, and all the interest hereafter paid can be, under the charter, converted into stock. It is maintained that such was not the intention of the amendment of 1867, and the only stock that exists or can be valid is such stock as is or may be acquired by the tax-payer in the payment of the interest on these bonds and the principal as the bonds mature.

It is argued by appellant that no corporate rights belonged to or were given to this district by the act in question, and no express or implied power to vote the stock or receive the dividends—further, that the stock had not been paid for, and, therefore, by an express provision of the statute, the district, if owning the stock, could not vote it until fully paid.

As to these propositions attempted to be maintained by counsel, it is proper to refer to the original act of incorporation to which the act of 1869 was an amendment, under which the county of Shelby and the town of Shelbyville were empowered to subscribe to this enterprise, and by the sixth section of the original act of incorporation, under which the stockholders were authorized to elect directors, "*each stockholder was allowed one vote for every share owned by him, her or it,*" and the amended act in no manner changed or restricted this right as to any subsequent stockholder, whether a natural or artificial person.

The amended act creating this taxing district, making its subscription to depend upon the popular vote,

and requiring its bonds to be executed and delivered to the company by the county judge, under the name and seal or scroll of the district, or the portion of Shelby county authorized to vote, made it a corporation, entitling it to all the rights and privileges of a stockholder.  If this district had the power to vote the tax, to execute its bonds with its seal and scroll in payment of the tax, and did, in fact, sign and deliver its bonds to the company, through the county judge, in payment of its subscription, it required no other provision to enable it to vote its stock or to become a stockholder; but, on the contrary, it would require an express provision of the statute preventing the exercise of such a power before the right could be withheld.  The stock was not only subscribed but *paid* for by the delivery of its bonds, payable in twenty years, with eight per cent. interest until maturity.  These bonds were placed on the market, and the money realized, and, so far as the railroad company is concerned, the stock subscription by the district has been fully paid, and the payment of 'the bonds is between the holder and the tax-payer.  After the payment of this subscription on the bonds of the district, to say that the district is not entitled to the stock or the dividends is not warranted by either the letter or the spirit of the act under which the subscription was made.  A subscription of three hundred thousand dollars, paid in bonds, bearing eight per cent. interest, and still not a stockholder in the corporation, or entitled to its portion of any dividend declared, is repugnant to every provision of the charter and to that idea of justice and equality that

should prevail as between those investing in a common enterprise. There were no tax receipts at the date of the delivery of the bonds to be converted into stock, and the interest, payable in each year by the individual tax-payer, would not for several years, in many instances, entitle him to a certificate of stock, thus leaving a paid up subscription sufficient to construct one half the road without representation for years in the selection of its officers, and without any right to recover a dividend. Such could not have been the legislative intent, nor is such a view the proper construction to be placed on the charter.

It is true that this district is but the trustee for the tax-payer, and the dividends will lessen the tax imposed or discharge the liability of the tax-payer to that extent; but the right to vote the stock and receive the dividend is unquestioned.

It is, however, argued that the provisions of section nine of the amended act excludes the idea that any other stock can be voted except that for which certificates have been issued to tax-payers. We think a construction of that section in connection with the entire charter leaves but little room to doubt the right of the district to vote the stock originally subscribed. It may be that affirmative rights or powers are not to be deduced from a restraining statute, and, therefore, because portions of counties are prohibited from voting the stock for which certificates have been issued to the tax-payers, it does not follow that the district had the right to vote the original subscription of stock. It must be conceded that the original act of incorporation gave expressly to each

stockholder a voice in the selection of its officers, and section nine of the act of 1869 negatives the idea that the voting of stock with reference to this district was to be confined to tax-payers alone; but, on the contrary, following both the letter and spirit of the charter, it clearly indicates that other stock is to be voted by *the counties* or *portions of counties* than that to be voted upon tax certificates. " The several counties or portions of counties shall not vote the stock for which certificates may be issued to tax-payers," etc. This is to be voted by the individual tax-payer or stockholder when obtaining his certificate; but as to the original stock subscription paid by the county or a portion of the county, that is to be voted by the county or portion of the county.

Such is the plain letter of the original act, and without conferring the power in express terms upon the particular district, the provision of the act authorizing a stockholder to vote entitles both natural and artificial persons, holders of stock, to vote it.

This portion of Shelby county will be deprived of its right to vote the stock or receive the dividends when the tax-payers discharge the principal and interest of its bonds, or to the extent the principal may be reduced by the tax-payer. When paid it becomes the stock of the tax-payer, and for this reason the Chancellor below, finding the principal of the subscription reduced by the tax-payer, he only permitted the district to vote so much of the principal stock as remained unpaid, the taxing district being divested of its stock to the extent the principal had been paid by the tax-payer. The stock

of a county in a corporation like this may be increased by permitting the interest paid to be converted into stock, and the original stock in this way doubled or trebled.

Such provisions are inserted in many charters, those provisions constituting the contract between the stockholders. The interest for twenty years on these bonds may be converted into stock because the charter authorizes it. Preference is often given in this way to counties, towns, and districts to induce subscriptions, and to place the corporation in such a financial condition as will enable it to dispose of bonds based on the credit of the county or district subscribing, and in this manner construct its road.

Individual subscriptions, except for small sums, are rarely ever made to such undertakings, and to hold that counties or portions of counties can subscribe and pay its stock that in effect makes the enterprise a success, and still not be a stockholder, is unreasonable, and certainly not warranted in the case being considered. In this case, if the principal should not be paid for twenty years from the date of the bonds, the interest stock would greatly exceed the principal; still, such being the charter, we see no reason why its terms should not be enforced.

The city of Louisville had no right to vote the stock subscribed, because no part of it had been paid, no bonds had been issued, and the tax collected from the tax-payer, evidenced by his receipt, constituted the principal stock. Neither the city nor the tax-payer paid any interest, but the principal

stock paid by an annual levy.  It is not insisted by
the appellees that the district owns this stock in its
own right, but that it holds it for the tax-payer,
and is entitled to the dividends on the unpaid sub-
scription to be applied to the reduction of the debt
or to lessen the amount of the tax.

The fact that some of the bonds have been called
in and others executed at a less rate of interest is
for the benefit of the tax-payer, and can not be said
to have satisfied the district indebtedness.  The act
of March 11, 1870, giving the county judge and jus-
tices the right to vote the stock, is but speaking the
language of the charter.  These financial agents of
the county were made the agents of the particular
district, and when subscribing the stock and issuing
the bonds, were entitled to vote in behalf of the
stockholders.  The act may be silent as to the mode
of disposing of the dividends, but, as before stated,
when applied as they should be, to a reduction of
the debt or the interest, it enures to the benefit of
those entitled.

If the title of the act of March 11, 1870, is mis-
leading and unconstitutional, so is the title to the
act of February 3, 1869, under which all these rights
have been acquired.  We see no reason for holding
either unconstitutional by reason of the title.  It
results, therefore, that the portion of Shelby county
voting this subscription has the right, through the
county judge, etc., to vote the original stock sub-
scription to the extent that it has not been reduced
by the payment of a part of the principal by the
tax-payer; that it has the right to receive the divi-

dends on this stock and apply it to the reduction of the debt or the interest.

The judgment of the court below conforming to the views herein expressed is now affirmed.

To the petition for a rehearing, filed by counsel for appellant, JUDGE PRYOR delivered the following response of the court, and extension of the original opinion:

It is evident that the act of February 3, 1869, is but an amendment to the original act of incorporation, and while its provisions are indefinite as to the manner in which counties and district stock is to be voted, the acts of March 11, 1870, and of the 26th of February, 1873, only make that certain which before was uncertain, or had been omitted from the original act of incorporation by giving the district a distinct name, and authorizing it to be represented by the county judge and justices of the county. It is insisted that the district had no power to sue or be sued; and that this being one of the essential requisites of such a corporation or incident thereto, it must be regarded as the mere agency of the people or the sovereign to subscribe the stock when voted for, and nothing more. While the act of 1869 is not perfect in all its parts, it is manifest, we think, that the district could be sued upon its bonds, and if not, the liability having been created, the amended acts of 1870 and 1873 only furnish the means of enforcing that liability by providing

a remedy by which the rights of the corporation may be asserted, and its liabilities enforced.

There has been no change of contract; but it is plain that proceedings in behalf of and against the corporation must be controlled by these amended enactments. They now constitute a part of the charter of the corporation. We see no reason for reversing the judgment below.

This is to be regarded as a part of, and an extension of, the original opinion.

Petition overruled.