CASE 36—PETITION EQUITY—JULY 5.

## Bullock, &c., vs. Curry, &c.

APPEAL FROM PENDLETON CIRCUIT COURT.

1. Where a statute authorized a county to subscribe to the stock of a railroad company, upon condition that the holders of real estate therein should, by a majority, vote for such subscription, and the question was submitted by the county court to all the voters of the county, the levy of a tax for that purpose is invalid.

2. The first section of an act authorizing a subscription of stock by a county court to a railroad company, and the levy of a tax to pay the same, provided, that, before a *subscription shall be made* and the *tax levied,* the question of *levying the tax* shall be submitted to the voters of the county, and if a majority of the votes cast shall be in favor *of the tax,* the same shall be levied. The third section of the same act

declared, that the county court should appoint a day for the vote to be taken, and give notice thereof, and when a majority of the votes cast shall be in favor of *a subscription*, the court shall immediately *subscribe the same* in accordance with the vote. A subsequent act contained a proviso similar to that in the first section, *supra*. *Held*— (in a proceeding by tax-payers to resist the collection of the tax,) that the submission of the question of *levying the tax*, and a majority of the votes cast in favor of the tax, are a condition precedent, the performance of which is indispensable to the exercise of any authority or power on the part of the county court to make the subscription and levy the tax—the submission of the question of subscription merely was not sufficient, and the tax-payers cannot be coerced to pay the tax levied upon such submission.

W. W. TRIMBLE, for appellants, cited *sec.* 8, *act of* 27*th Feb.*, 1849, *Sess. Acts* 1848–9, *page* 384 ; *sec.* 1, *act approved* 4*th March*, 1850, *Sess. Acts* 1849–50, *p.* 378 ; *act* 6*th March*, 1850, *Sess. Acts* 1849–50, *p.* 580 ; 17 *B. Mon.*, 343–4 ; *Best on Presumptions, p.* 186 ; *Slack vs. Maysville & Lex. R. R. Co.*, 13 *B. Mon.*, *dissenting opinion of Judge Hise.*

WM. S. RANKIN, on same side, cited *act of* 27 *Feb.*, 1849, *Sess. Acts* 1848–9, *p.* 384, *sec.* 8 ; *act of* 4*th March*, 1850, *Sess. Acts* 1849–50, *p.* 378 ; *act of* 6*th March*, 1850, *Sess. Acts* 1849–50, *p.* 580.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT :

The county court of Pendleton county had no authority to subscribe stock in the Covington and Lexington railroad company, or to levy a tax for the payment of any stock so subscribed, except the authority which was conferred by three several acts of the General Assembly.

The *first* act relating to the subject is the act of 1849, by the 8th section of which the county of Pendleton is authorized to subscribe to the capital stock of the company not exceeding one hundred thousand dollars, and to borrow money to pay the same, *provided* the holders of real estate residing in the county shall by a majority *so vote*, at such time as the county court may appoint. (*Sess. Acts* 1848–9, *p.* 384.)

The *second* is the act of March 4, 1850, the first section of which provides that the county court of Pendleton, (and of the other counties mentioned,) for the purpose of paying their subscriptions of stock, shall levy and collect a tax on the taxable property within the county, not exceeding one half of one per

cent. per annum for five years : *Provided*, That before a *sub-scription shall be made* and the *tax levied*, the question of *levying the tax* shall be submitted to the voters of the county, and if a majority of the votes cast shall be in favor *of the tax*, the same shall be levied.

The third section of this act declares that " the county courts of the counties aforesaid shall appoint a day for the vote to be taken, and shall give sufficient public notice thereof, and when a majority of the votes cast shall be in favor of *a subscription*, the court shall immediately *subscribe the same* in accordance with the vote." (*Sess. Acts* 1849–50, *p.* 378.)

The *third* is the act of March 6, 1850, which provides that the county court of Pendleton, (and of the other counties enumerated,) for the purpose of paying the subscription of stock authorized to be made, shall levy and collect a tax on the taxable property within the county, not exceeding one per cent. per annum, for three years : *Provided*, That before *a subscription shall be made* and the tax *levied*, the question of *levying the tax* shall be submitted to the voters of the county, and if a majority of the votes cast shall be in favor *of the tax*, the same shall be levied.

The county court of Pendleton county, at its July term, 1853, made an order directing the officers of the election, which was to be held on the first Monday in August next ensuing, to " receive all the votes offered for or against the subscription, by this county, of $50,000 to the capital stock of the Covington and Lexington railroad company, in accordance with the provisions of the act of the legislature approved 27*th February*, 1849," upon the terms and conditions set forth in a certain order which had been passed by the company, and submitted to the court.

It appears that a majority of the votes cast at this election were in favor of the subscription, and at the September term following the county court made an order, directing a subscription of $50,000 to the stock of the company, and the issuing of the bonds of the county, bearing interest at the rate of six per cent. per year, payable semi-annually in New York, the principal redeemable in thirty years. The bonds were accordingly issued and delivered to the company.

At the January term, 1859, the county court of Pendleton made an order for the levy and collection of a tax of twenty cents on the one hundred dollars' worth of taxable property within the county, to pay the interest on the bonds, and ultimately, the principal.

This petition was filed soon afterwards, in which the plaintiffs seek to resist the collection of this tax upon the ground that the county court had no legal power to assess or to order the collection of such tax.

Upon hearing, the court below was of opinion that the plaintiffs were not entitled to relief, and dismissed their petition, and ftom that judgment they have appealed.

The only question to be considered is, whether the statutes referred to, or either of them, conferred upon the county court any valid authority to levy the tax in question in view of the facts appearing in the record.

It is not pretended that the power to levy the tax can be maintained under the provisions of the act of 1849, which authorized a subscription of stock only upon the express condition set forth in the proviso—that a majority of the holders of real estate should vote for such subscription. The question was not submitted to this class of voters only, but to all the voters of the county, without qualification or restriction.

Is the action of the county court sustained by the act of March 4, 1850? It certainly is not by the first section of that act, because the proviso of that section declares in the most explicit terms that before a subscription shall be made *and* the tax levied, the question of *levying the tax* shall be submitted to the voters of the county, &c. The submission of the question *of levying the tax*, and a majority of the votes cast in favor of the tax, are thus made a condition precedent, the performance of which is indispensable to the exercise of any authority or power on the part of the county court to make the subscription and levy the tax. The terms of the act are imperative. The legislative will could not have been expressed in language more appropriate or less ambiguous.

But, according to the view of the circuit judge, the third section of the act we are considering must be construed as vir-

tually repealing so much of the first section as prescribed the
question to be submitted to the voters, and that, by the terms of
the third section, the submission of the question of subscription
merely, and the majority of the votes which were cast in favor
of the subscription, were sufficient to justify the action of the
county court in levying the tax.

But this interpretation is wholly inadmissible.  It is unreas-
onable to suppose that the legislature could have intended, by
a subsequent section of the same act, to take away the limita-
tions and restrictions with which they had, in the first section,
so carefully and wisely guarded the delegation of power to the
county court to impose this local burthen upon the people of
the county.   A different and well known rule for the construc-
tion of statutes, by which effect may be given to every part of
the whole act, must prevail.

The first section is altogether silent in regard to the day upon
which the vote is to be taken, the notice which is to be given
of the contemplated vote, and the time within which the sub-
scription of stock is to be made.   To supply these omissions
seems to have been the chief if not the only object of the third
section.   It directs the court to appoint a day for the vote to be
taken, to give sufficient notice thereof, and to subscribe the
stock immediately, in accordance with the vote in favor of the
subscription.   It does not purport to define or prescribe the
*question* to be submitted to the voters.   That had been done
precisely and carefully in the first section.   And if the literal
construction given to this section by the circuit judge were
allowable at all, it would only prove that the legislature intended
to confer upon the county court power to *subscribe* the stock
whenever a majority of the votes cast should be in favor of a
subscription; and intended, at the same time, to withhold from
the court any authority to levy a tax for the payment of such
subscription until the question of *levying the tax* had also been
submitted, and voted upon affirmatively by the majority of
those voting.

But if there could be any reasonable doubt as to the con-
structive effect of this third section, it is effectually removed by
the subsequent act of March 6, 1850.   That act embodies the

latest expression of the legislative will upon this subject, and must operate to repeal all previous legislation in conflict with it. By the proviso of this act all power to levy the tax is denied to the county court, except upon the express condition that the question of levying the tax shall have been submitted to the voters of the county, and that a majority of the voters shall have been in favor of the tax.

No such question has ever been submitted to the voters of Pendleton county, and no such vote has ever been ordered by the court, so far as this record shows; and it follows, as an inevitable legal consequence, that the levy of the tax by the county court was unauthorized by law, and that the appellants were entitled to the relief sought.

We deem it unnecessary to add anything further for the purpose of demonstrating that the submission of the question of subscribing fifty thousand dollars to the capital stock of the railroad company was no compliance, either in substance or form, with the plain requirements of the statutes we have been considering.

What effect the decision of the question presented by this record is to have upon the rights of the holders of the bonds, or upon the rights of others who are not parties to the record, is a matter with which we have nothing to do, and in regard to which we express no opinion. We decide nothing more than that upon the record, as it now stands, the appellants cannot be coerced to pay the tax, the collection of which they here seek to resist.

The judgment of the court below is therefore reversed, and the cause remanded for further proceedings in conformity with this opinion.