CASE 18—PETITION EQUITY—JANUARY 29.

# Kentucky Union Railroad Company v. Bourbon County, &c.

### APPEAL FROM BOURBON CIRCUIT COURT.

1. COUNTY SUBSCRIPTIONS OF STOCK FOR RAILROAD PURPOSES.—An act regulating the "manner of voting" in a particular county in "all votes of subscription and taxation therefor for railroad purposes" applies to votes where the question submitted is "whether or not stock shall be subscribed," and not merely to votes where the question of *levying the tax* is submitted, and must be regarded as an amendment to a railroad charter which authorized the submission of the question "whether or not stock shall be subscribed."

2. SAME.—There can be no valid and enforceable subscription of stock by the county court on behalf of a county without power to levy and collect taxes to satisfy it.

3. SAME—CONSTITUTIONAL LAW.—The power of a county court to make a subscription of stock for the county, and to levy taxes to meet it, is conferred by express grant, to which the Legislature may annex any condition not repugnant to the Constitution.

   The Legislature, therefore, has the power to require, as a condition precedent to the validity of a subscription of stock by a county court for railroad purposes, not only a majority of all votes cast in the county, but also a majority of those residing outside the limits of a certain town in the county. Such a statute does not confer a personal privilege at all, much less an exclusive privilege, in the meaning of the Constitution. And the provision of the statute construed in this case that "no tax shall be imposed for said purpose upon the property of those residing outside said (town) limits, unless the votes of a majority of the voters thus residing outside said limits shall be cast in favor of such subscription and tax," was not intended to cast any burden at all upon those within the limits of the town in the event a majority of those outside the limits should vote against the proposition.

4. THE PROVISIONS OF THE STATUTE ARE NOT FOREIGN TO THE SUBJECT EXPRESSED IN THE TITLE, the subject expressed being "the manner of voting in Bourbon county on questions of tax for subscription to railroad companies." The phrase "manner of voting" may fairly be applied to determining and declaring the result of a vote.

5. THE COUNTY COURT ACTS MINISTERIALLY, AND NOT JUDICIALLY, in making a subscription of stock on behalf of the county, and the

circuit court has power to declare such a subscription void when made without authority of law, and to enjoin the collection of a tax to pay it.

A. DUVALL FOR APPELLANT.

1. The order entered by the Bourbon county court on the fifth of June, 1885, was a judicial, and not a ministerial act, and the correctness of that judgment, which remains unreversed, cannot be collaterally questioned in this proceeding. (Commonwealth v. Jones, 10 Bush, 749; Dooley v. Franklin County Court, 3 Bibb, 13; Gorham v. Luckett, 6 B. Mon., 163; Murray, &c., v. Oliver, &c., 3 B. Mon., 1; Shelby County Court v. Cumberland and Ohio R. R. Co., 8 Bush, 209; Commonwealth v. Cain, 80 Ky., 818; Bank Lick Turnpike v. Phelps, 81 Ky., 613.)

2. The appellees had the right to appeal from the order of the county court (Act of May 9, 1884, Session Acts, p. 179), and where an appeal is given by statute from a judgment or proceeding, the appeal is exclusive of the jurisdiction of any other court to vacate or modify such judgment or proceeding. (Hughey v. Sidwell's Heirs, 18 B. Mon., 207; Walton, &c., v. Ratcliff, 5 Bush, 576.)

3. The act of March 18, 1876, has no application to this case. That act regulates the manner of voting "on questions of *tax* for subscription to railroad companies," while the vote involved in this case was upon the question whether or not *stock should be subscribed and taken*, which is a very different thing from a vote on the question of *levying a tax* to pay the subscription. (Bullock v. Curry, 2 Met., 174.)

4. The act is unconstitutional because it relates to two distinct subjects, only one of which is expressed in the title.

   The first clause of the act is valid, because it relates to the *manner* of voting, the subject expressed in the title. The latter clause is invalid, because it relates to a subject not expressed in the title. (Rushing v. Sebree, &c., 12 Bush, 198.)

5. This act cannot be construed as repealing any part of the nineteenth section of the company's charter. (Foreman v. Murphy, &c., 7 Bush, 303; Commonwealth v. Weller, 14 Bush, 218; Commonwealth v. Cain, 14 Bush, 525; Elizabethtown and Paducah R. R. Co. v. Trustees of Elizabethtown, 12 Bush, 233; 7 Ky. Law Rep., pp. 19, 20, 21.)

6. The question whether or not an incorporated company was or was not organized according to its charter cannot be made collaterally, but must be made by a direct proceeding against the corporation. (Wright v. Shelby R. R. Co., 16 B. Mon., 5; 9 B. Mon., 71; 5 Litt., 45; 7 Bush, 639; Lail v. Mt. Sterling Coal Road Co., 13 Bush, 35.)

7. To the objection that the conditions on which the subscription was voted have not been performed, it is a sufficient answer that the county court acted judicially, and the correctness of its judgment can

not be collaterally questioned. (Shelby County Court v. Cumberland and Ohio R. R. Co., 8 Bush, 209; Bank Lick Turnpike Co. v. Phelps, 81 Ky., 613.)

P. B. MUIR on same side.

1. The chancellor had no jurisdiction to revise or review the judgment of the county court in the computation of the votes cast at the election. (Commissioners of Knox County v. Aspinwall, 21 How., 539; Newcum v. Kirtley, 13 B. M., 517; Batman v. McGowan, 1 Met., 539.)

2. The act of 1876 has no application to this case. The vote in question here was upon the question "whether or not stock shall be *subscribed* and taken," and not upon the question of a *tax* for subscription to a railroad company. The difference is substantial. (Bullock v. Curry, 2 Met., 171.)

3. The second clause of that act must be rejected as void, because—

*First.* It does not relate to the *manner* of voting, the only subject expressed in the title. (State Constitution, article 2, section 37.)

*Second.* The right to tax property in the town of Paris is made to depend, not upon the *location* of the *property*, but upon the *residence* of its owner.

*Third.* It gives unequal effect to the votes of the various electors. Such legislation is "unequal and unjust," violating the principle of equality and justice that pervades the Constitution. (Barbour v. Board of Trade, 6 Ky. Law Rep., 772; Smith v. Warden, 80 Ky., 609.)

EMMETT M. DICKSON for appellant.

1. The county court alone had jurisdiction to determine whether it would make the subscription in question in this case, and the parties cannot, by consent, give the circuit court jurisdiction. (Brown v. Crow's Heirs, Hardin, 454; Starks' Adm'rs v. Thompson's Adm'r, 3 J. J. Mar., 300; 1 J. J. Mar., 472.)

2. The county court in making the subscription acted judicially, and the remedy, if any, was by an appeal and not by an independent action. (Shelby County Court v. Cumberland and Ohio R. R. Co., 8 Bush, 209; Gorham v. Luckett, 6 B. Mon., 146; Stevens' Heirs v. Stevens, 3 Dana, 371; Isaacs v. Taylor, 3 Dana, 600; Commonwealth for &c. v. Boone County Court, 6 Ky. Law Rep., 755; Bank Lick T. P. Co. v. Phelps, County Judge, 81 Ky., 613; Stahl v. Brown, 8 Ky. Law Rep.)

3. The circuit court had no right to grant an injunction as prayed for. Only the court in which the judgment was rendered had that power. (Civil Code, sec. 285; McConnell, &c., v. Rowe, &c., 8 Ky. Law Rep.)

4. The county can not enjoin a judgment of the county court, the county and the county court being one and the same. (Chicot County v. Tilghman, Ex'r, 26 Ark., 461.)

5. The legality of the organization of the appellant cannot be inquired into in a collateral proceeding of this character.　(Chubb v. Upton, 95 U. S., 667; Pierce on Railroads, p. 64; Angell & Ames on Corporations, 11 ed., p. 684; Gill, Adm'r, v. The Ky. and Colorado Gold and Silver Mining Co., 7 Bush, 635; Wright v. Shelby R. R. Co., 16 B. M., 5, 6, 7.)

6. But even if it could, the appellant, at the time the subscription was made, was legally organized and existing *de facto* and *de jure*.

7. While the appellant has no right to place one stockholder, or one subscriber, upon a better footing than another, such action by the company is not a valid reason for Bourbon county's refusal to pay her subscription, as she can not be bound or prejudiced by such illegal acts on the part of the company. (Pierce on Railroads, p. 76.)

8. The county, having made a subscription to appellant, is estopped to deny appellant's corporate existence.　(Angell & Ames on Corporations, p. 643.)

9. The act of 1876 does not in express terms repeal section 19 of appellant's charter, and while they are apparently contradictory, they are not so in fact, and both should be upheld.　(Elizabethtown and Paducah R. R. Co. v. Trustees of Elizabethtown, 12 Bush, 233.)

10. The appellant's charter was a contract which the Legislature had no right to alter by a subsequent act. (Dartmouth College Case, p. 493.)

11. The second clause of the act of 1876 relates to a subject not expressed in the title, and must, therefore, be rejected as void.　(Rushing v. Sebree, &c., 12 Bush, 200.)

12. The act is unconstitutional, because, by its terms, the *residence* of the owner of property, and not the *location* of the property, determines whether or not it shall be taxed.　And for the further reason that it gives greater effect to the votes of the electors in one part of the county than to the votes of those in another part of the county.

13. If this act is valid, the proposition to subscribe was in effect submitted to the voters outside of the limits of the city, while appellant, under its charter, was entitled to have the proposition submitted to the voters of the whole county. (Judge of Campbell County Court v. Taylor, 8 Bush, 206.)

A. H. WARD on same side.

1. The act of the county court in making the subscription was judicial, and the only remedy of appellees was by appeal. (Gorham v. Luckett, 6 B. Mon., 146; Commonwealth for &c. v. Boone County Court, 6 Ky. Law Rep., 755; Bank Lick T. P. R. Co. v. Phelps, 81 Ky., 613; Stahl v. Brown, 8 Ky. Law Rep.; Shelby County Court v. Cumberland & Ohio R. R. Co., 8 Bush, 213.)

2. The Bourbon county court alone had jurisdiction of the *subject-matter*

of this action; and, therefore, the circuit court was without jurisdiction.

Consent can not give jurisdiction of the *subject-matter*. (Brown v. Crow, Hard., 448; Kennedy v. Terrill, *Ibid.*, 493; Stark v. Thompson, 3 J. J. Mar., 299; Brown v. McKee, 1 J. J. Mar., 472; Fidler v. Hall, 2 Met., 461; Hughes v. Hardesty, 13 Bush, 366; Civil Code, section 92, subsections 1 and 4.)

SAME COUNSEL, in petition for rehearing, insisted that the act of the county court in making the subscription was a judicial act, and cited the same authorities cited in original brief.

B. F. BUCKNER FOR BOURBON COUNTY.

1. The county is not estopped to deny the corporate existence of appellant, as the general rule, that a person who contracts with a corporation is estopped to deny its existence, does not apply where the question is as to the liability of a subscriber to the capital stock whose subscription was made upon condition that a certain amount of stock should be subscribed. In such a case he is not estopped to deny that the requisite amount of stock has been subscribed. (Morawetz on Private Corporations, sections 127, 130, 132, 133, 265, 266; Utley v. Union Tool Co., 11 Gray, 139; Fry v. The Lexington and Big Sandy R. R. Co., 2 Met., 323.)

2. The order of the county court making the subscription was ministerial merely, and not judicial.

3. There is no *written* evidence in the record as to any attempt to comply with the provisions of the law in regard to the formation of the company, and the facts proved are not sufficient to admit secondary evidence.

The loss of a paper must always be strictly proved before secondary evidence is admissible. (Willis v. McDale, 2 South., 501; Boynton v Rees, 8 Pick., 329; Dawson v. Graves, 4 Call., 127; U. S. v. Porter, 3 Day, 283; Caufman v. Congregation, 6 Binn., 59; Doe v. McCaleb, 2 How. (Miss.), 756; Bouldin v. Massie, 7 Wheat., 122; Redman v. Green, 3 Iredell's Ch'y, 54; U. S. v. Boyd, 5 Howard, 29; Marshall v. Haney, 9 Gill, 251; Roe v. Darrah, 20 Ala., 288; Inzar v. Toulemin, 9 Ala., 662; Kelsey v. Hammer, 18 Conn., 311; Waller v. School District, 22 Conn., 326; U. S. v. Sutter, 21 How. (U. S.), 170; Rex v. Castleton, 6 T. R., 236; Williams v. Younghusband, 1 Starkie, 139, 2 Eng. Com. Law.)

4. The subscription is not binding, for the reason that a valid, obligatory subscription could only be made by a county in which the road *had been* located.

Such grants are always construed with the utmost rigidity against the corporation. (Fertilizing Co. v. Hyde Park, 97 U. S., 666; Morawetz on Private Corporations, 153; Sedgwick's Construction of Statu-

tory and Constitutional Law, 291, 292; Pollock, C. B., in Eastern Archipelago Co. v. Regina, 2 E. & B., 906; Brown's Legal Maxims, 607; Feather v. Regina, 6 B. & S., 283; Penn. R. R. Co. v. Canal Commissioners, 21 Penn., 9.)

5. Under this rule of construction, there was no authority under appellant's charter for any *conditional* subscription, and the conditions annexed to the subscription in this case are *ultra vires* and unlawful.

A conditional subscriber does not become a corporator until after the performance of the condition. (Morawetz on Private Corporations, 286 *et seq.*)

This is the case of a *conditional* subscription, and not merely one on *special terms*. (Morawetz, 294, *et seq.;* McMillan v. M. & L. R. R. Co., 15 B. M., 234.)

6. The directors had no authority to admit Bourbon county as a favored stockholder by the execution of the mortgage and the covenants mentioned in the proposition. (Morawetz, sections 290, 292, 293.)

7. The act of March 18, 1876, is not unconstitutional.

In determining whether or not an act of the Legislature is constitutional, every possible presumption and intendment will be made in favor of its constitutionality. (Sedgwick on Construction of Statutory and Constitutional Law, 409; Cooley's Constitutional Limitations, 182, *et seq.*)

The subject of the act in this case is sufficiently expressed in the title. (Allegheny County, Home's Appeal, 77 Penn. St., 77, 80; Johnson v. Higgins, 3 Met., 569; Phillips v. Cincinnati and Covington Bridge Co., 2 Met., 222; Davis v. State, 61 Am. Dec., 331, and note, page 343; McNeil v. Commonwealth, 12 Bush, 730; Commonwealth v. Bailey, 81 Ky., 395; Collins v. Henderson, 11 Bush, 79.)

The act fairly construed only requires a concurrence of a majority of both classes—country and city voters—to impose a tax, and, therefore, is not open to the objection that a different effect is given to the votes of one body of electors from that given to another.

Even if it be true, that under this law the country voters can vote a tax on the city voters' property, no such case has arisen; and the court will not, until a case arises for its determination, construe the terms of an act in order to arrive at the conclusion that it is unconstitutional. (Cumberland and Ohio R. R. Co. v. Barren County, 10 Bush, 612.)

But the act is not capable of such a construction when its purpose and intent are considered.

8. The action of the county court in fixing and determining that the subscription is valid and binding, is not a finality when the rights of innocent purchasers of bonds are not involved. (Knox v. Aspinwall, 21 How., 539; Chambers County v. Clews, 21 Wall., 321; 1 Dillon's Municipal Corp., section 519; *Ibid.*, sections 163 and 164, and cases

cited; Bowling Green R. R. v. Warren County, 10 Bush, 711; Daviess County v. Howard, 13 Bush, 101; Harting v. Rockford Ry. Co., 65 Ill., 92.)

The case of Shelby County v. Cumberland and Ohio Railway Co., 8 Bush, 214, has no application; but if it had, it is in conflict with Clay v. Nicholas County, 4 Bush.)

J. H. BRENT for Bourbon County.

1. The act of 1876 is constitutional.

Rules for determining whether or not a statute is constitutional. (Cooley's Constitutional Limitations, section 184; 1 Blackstone's Com., p. 91; Potter's Dwarris on Constitutions and Statutes, p. 423, note 4; Smith v. Cochran, 7 Bush, 147.)

2. Such votings as the one in question in this case are, in no constitutional sense, *elections* (Marshall v. Donovan, 10 Bush, 694), and the Legislature can arbitrarily fix any value it pleases upon the votes of the different electors. And certainly there can be no ground for complaint where the country voters, *as in the case at bar,* avail themselves of this discrimination as a *shield.*

3. The county, having been guilty of no delay or laches, and having done nothing by which appellant has suffered or been in any way misled, is not estopped to deny the authority of the magistrates to make the subscription. (Desty on Taxation, vol. 2, p. 1214; People v. Cline, 63 Ill.)

4. There was no right of appeal from the order of the county court, and the only remedy the county had was by an original action.

5. The only question which, under appellant's charter, could properly be submitted to the voters of Bourbon county, was whether or not stock should be subscribed and taken. There was no authority to submit the question as to the amount of stock to be taken, and the vote upon such a proposition was unauthorized and void.

6. The county is not liable upon its subscription, unless the appellant can show that 5,000 shares of stock have been subscribed, the subscription having been made upon that condition. (Fry v. Lex. and Big Sandy Railway, 2 Met., 514.)

The county is not estopped, by its attempted subscription, to deny the existence of the company, as the power of the county to make a contract of subscription depends upon the existence of the corporation.

7. "As clearly defining the status and functions of the county court in making the subscription in this case," see Garrard County Court v. McKee, 11 Bush, 236, 237.

GEO. C. LOCKHART for appellees Ferguson, etc.

1. In no case where, as in the case at bar, the vote is authorized to be taken on the question of subscription simply, does the county court

act judicially in making the subscription. (Slack v. M. & L. R. R. Co., 13 B. Mon., 22, 23; Marshall v. Donovan, &c., 10 Bush, 694.)

The case of Shelby County Court v. Cumberland and Ohio R. R. Co., 8 Bush, 209, distinguished.

2. There was never any legal organization of the Kentucky Union Railway Company.

An *absolute* subscription of 5,000 shares of stock was a condition precedent to the organization of the company. Subscriptions upon special terms, which were not accepted until after the alleged organization, were not sufficient. (Wood on Railway Law, vol. 1, p. 67; Morawetz on Private Corporations, sec. 290.)

3. The location of the road through ·Bourbon county was a condition precedent to the right of the company to ask for a vote on the question of subscribing. (Pierce on Railroads, 254.)

4. The county court had no authority to annex conditions to the proposition voted on, and the fact that it did so, invalidated the vote.

5. The act of March 18, 1876, is not unconstitutional.

The title of the act is sufficient. Every provision of the act relates directly or indirectly to the subject expressed in the title. (2 Met., 221; 13 B., 681; 79 Ky., 573.)

The act does not disturb any vested right by reason of the fact that it modifies the provision of appellant's charter relating to the vote of the people on the question of subscribing. (Cumberland and Ohio R. R. Co. v. Barren County Court, 10 Bush, 604.)

There is no exclusive privilege conferred by the act. Since the legal voter has no constitutional right to vote on this question, the Legislature may, in providing for a submission of the question, give greater effect to the votes of one class of electors than to the votes of another class. (Marshall v. Donovan, 10 Bush, 694; Logan County v. Caldwell, 1 Ky. Law Rep., 376.)

5. The act of March 18, 1876, is inconsistent with the provisions of appellant's charter upon the same subject, and, therefore, constructively repeals those provisions.

6. The subscription by the county without performance by the company of its agreements, concurrently with the subscription, is void.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

May 9, 1885, the Bourbon county court, composed of the presiding judge and a majority of the justices of the peace, made an order directing the sheriff to hold an election at the usual voting places in that county, to ascertain whether or not a subscription of

four thousand shares of stock of one hundred dollars each to the capital stock of the Kentucky Union Railway Company, payable in the bonds of the county, should be made by the county court for and on behalf of the county, upon the terms and conditions set forth in the order. In that order is the following provision: "And the sheriff is directed to have such election in the Paris precincts so held as to have the votes of all voters residing in the limits of the city of Paris, as they existed under the act of March 5, 1868, made and received separately from the votes cast by the remainder of the county, it being provided by an act approved March 18, 1876, that no tax should be imposed upon the property of those residing outside said limits, unless the votes of a majority of the voters then residing outside said limits shall be cast in favor of said subscription and tax." It was further provided that "the vote for subscription shall not be binding upon the citizens and property in that portion of the county embraced in what were the limits of the town of Paris as they existed under the act of March 5, 1868, unless by law the same is also binding upon the citizens and property of the county outside said limits."

It appears, and is agreed, that at the election held in pursuance of that order, the whole number of votes cast in the county in favor of the subscription of stock was two thousand two hundred and thirteen, and the whole number against it one thousand six hundred and fifty, and that there were cast by voters of the county residing outside the limits of the city of Paris, as they existed under the act of March 5, 1868, in favor

of the subscription, one thousand three hundred and five votes, and against it one thousand five hundred and forty-seven. But, nevertheless, the county court, composed of the presiding judge and justices, on June 5, 1885, after first reciting that the returns of the special election held May 23, 1885, had been laid before, examined and considered by the court, and that it appeared a majority of the votes cast at said election was in favor of said subscription, and the proposition to subscribe to the capital stock of the Kentucky Union Railway Company had been duly accepted by a majority of the legal voters of said county, according to the provisions of the charter of said company, made an order that the court then, by its agent, J. M. Hughes, appointed for the purpose, subscribe the number of shares of stock mentioned in the order of May 9, 1885, and upon the terms and conditions therein contained. And, thereupon, J. M. Hughes as agent, did, in presence of the court, make the subscription, and it was adopted and approved by the court.

This action was instituted June 12, 1885, by J. W. Ferguson and others, residents and tax-payers of Bourbon county, against the Kentucky Union Railway Company, the presiding judge and justices of the peace of Bourbon county, and J. M. Hughes, the county clerk, and in their petition they ask that the company be compelled to surrender the subscription of stock made in the manner mentioned, and the same be adjudged void and of no effect; that the presiding judge be enjoined from executing or delivering said bonds, and the members of the county court from

levying or collecting any tax to pay the subscription of stock on the bonds that may be issued. The same relief was asked in the cross-petition of Bourbon county, filed by the presiding judge of the county court. Upon final hearing, it was adjudged by the lower court that the subscription of stock is void and of no effect, and that the county court be enjoined from issuing any bonds, or levying any tax on account of said subscription of stock; and from that judgment the Kentucky Union Railway Company has appealed to this court.

The authority under which the county court acted in making the subscription of stock complained of, and upon which appellant relies, is section 19 of the act of 1854, incorporating appellant, which is as follows: "It shall be lawful for the county court of any county * * through which said railway, or its branches may be located, and they are hereby authorized to subscribe and hold stock in said company upon the same restrictions as other stockholders, provided it shall first be submitted to vote of the legal voters of such county * * to be held and taken at such times and places and in such manner as said authorities respectively may appoint, whether or not stock shall be subscribed and taken; and if when the vote be taken it shall appear that a majority of the votes shall be in favor of such subscription, it shall thereupon be lawful for such county court * * by county court, city or town authorities, by agents by them appointed, to subscribe and take in said company such amounts of stock as they shall determine, and to issue the bonds of such county, city or town,

payable with interest at such times and places as they may deem proper, and dispose of the same for the payment of such subscription, and pledge the faith and resources of such county, city or town for the payment of such bonds and interest, and they shall, from time to time, levy and collect such tax, ad valorem, upon all taxable property in their respective jurisdictions as shall be necessary to pay said bonds and installments of interest as the same become due, or to create a sinking fund for the gradual reduction of the same, provided that the rate of interest on the bonds shall not exceed ten per centum per annum. Or the funds to pay for such subscription of stock may be raised by such county court, city or town authorities, by an ad valorem tax on the taxable property in their respective jurisdictions, in such sums or installments as will meet such subscriptions," etc.

On the other hand, appellees insist that the vote in this case could not have been legally taken in any other manner, nor the subscription of stock made upon any other condition, than are prescribed in an act approved March 18, 1876, which is as follows: "An act regulating the manner of voting in Bourbon county on questions of tax for subscription to railroad companies.

"Be it enacted, * * that in all votes of subscription and taxation therefor for railroad purposes, hereafter to be made within the county of Bourbon, the portion of the county outside the limits of the city of Paris, as they existed under the act of March 5, 1868, shall vote separately from the portion of the county embraced within said limits; and no tax shall be imposed for said

purpose upon the property of those residing outside said limits, unless the votes of a majority of the voters thus residing outside said limits shall be cast in favor of such subscription and tax."

It is contended for appellant that act has no application to the vote we are considering, because the question authorized by section 19 of the act of 1854 to be submitted, and which was submitted and voted on, is, "whether or not stock shall be subscribed," whereas, the act of 1876 relates merely to "questions of *tax* for subscription for railroad purposes;" and in support of that position, the case of Bullock v. Curry, 2 Met., 171, is cited. There it was held that the submission of the question of subscription merely, though voted for by a majority, was not sufficient to justify the action of the county court in levying the tax, because the statute in that case provided in express terms that, before a subscription could be made or tax levied, the question *of levying the tax* should be submitted. That case shows what can not be disputed, that there is a distinction between a subscription of stock and levy of tax, and that a vote for the former without authority of law will not justify the latter. It was not, however, there decided that it would have been improper to submit to the voters the question of subscription as well as that of levying the tax. For every proposition of that kind should contain the terms and conditions of the subscription, and the manner, provided by the act authorizing the vote, in which it is to be paid. But that case has no bearing on the construction of the act of 1876, which must be determined by its own terms and the purpose of its passage. By it the Legislature, in our opinion, in-

tended to so amend section 19 of the act of 1854, and
all other railroad charters applicable to the county of
Bourbon, as that thereafter no subscription of stock
should be made in behalf of that county, nor taxes to
pay it imposed upon voters residing outside the limits
mentioned, against the will of a majority of them.   For
"subscription of stock and taxation therefor," are men-
tioned in the act connectively, and according to a fair
construction, made to depend upon the same condition.
It seems to us, if the provisions of the act of 1876 do
not apply to appellant's charter, they are utterly with-
out force or meaning.

But it would not avail even if the operation of the stat-
ute was limited to the question of taxation.   For there
can be no valid and enforceable subscription of stock by
the county court on behalf of a county without power
to levy and collect taxes to satisfy it, that being the
only mode by which it can be paid.   And if made in
the absence of such power, or in violation of the condi-
tion upon which it is delegated, the subscription would
be worthless and void.

It then being evident that section 19 of the act of
1854 is, so far as it authorizes a subscription for Bour-
bon county, without the assent of a majority of voters
residing outside the limits indicated, repugnant to the
act of 1876, it follows that the subscription in question
was made by the county court without authority of law
and is void, if the latter act is valid and in force.
Whether it is or not, therefore, becomes a vital ques-
tion in this case, and we will now consider the several
grounds upon which it is disputed :

1. It is argued that it violates section 3, article 2, of

the Constitution, which declares that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be embraced in the title."

This court has uniformly held that this provision should receive a reasonable, not a technical construction. And the rule laid down in Phillips v. Covington and Cincinnati Bridge Company, 2 Met., 219, has never been departed from. It is this: "None of the provisions of a statute should be regarded as unconstitutional when they all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title." Tested by this rule, we think none of the provisions of the act are liable to the objection made. The subject of the title of the act is, "the manner of voting in Bourbon county on questions of tax for subscription to railroad companies." There seems to be no objection to the first clause. But it is contended the subject of the second clause is not embraced in the title.

The phrase "manner of voting," literally interpreted, applies simply to the act of voting, which is provided for in the Constitution, but, by itself, signifies nothing. It is therefore plain that a more comprehensive meaning was intended and should be given to it. And, if so, why may it not fairly be applied to the counting of the votes and ascertaining the result of the voting? It seems to us there is a natural connection between "regulating the manner of voting" and prescribing rules or tests by which to determine and declare the result, which was the object of the clause in question. Moreover, any one reading or hearing read the title, would be informed that the act

was intended to regulate the manner of voting in a particular county, and on a particular question, independent of any other statute, and therefore readily infer that it contained the necessary provision for determining the result of such election.

2. It is next contended that the act violates section 1, article 10, which declares that "all freemen, when they form a social compact are equal, and that no man or set of men are entitled to exclusive, separate, public emoluments or privileges from the community, but in consideration of public services," and also section 7, which provides that "all elections shall be free and equal."

The argument of counsel to some extent is based on a mistake as to the true construction and effect of the statute. In our opinion the only subscription of stock allowable under the act is one made for and on behalf of Bourbon county, binding on and payable by the whole, not a portion of the county. And, consequently, if the subscription be legally made, all the property of the county alike, without regard to its location or the residence of the owner, may be taxed to pay it; but if not so made, none can be taxed. There can under the act, as we construe it, be no inequality or discriminations between tax-payers, in the assessment of taxes, as is contended. The act in substance provides that no tax shall be imposed for the subscription upon property of those residing outside the limits of the city of Paris as they existed under the act of 1868, unless a majority of them vote in favor of the subscription and tax. But, obviously, it was not intended that in case a majority of them voted against the prop-

osition the whole burden, or any burden at all, should fall on those residing within these limits. The meaning and effect of the act is to require not only a majority of all the votes cast in the county, which sufficed under section 19 of the act of 1854, but also a majority of those residing outside the limits mentioned, in order to authorize the subscription and tax. And thus construed, is the act in violation of either of the provisions of the Constitution quoted?

In considering this question it must be kept in view that the power of a county court to make a subscription of stock for the county, and to levy taxes to meet it, is conferred by express grant, to which the Legislature may annex any conditions not repugnant to the Constitution, or withhold it altogether in any case. It may, as has been often held, authorize such subscription and levy for a county, or for specified districts of a county contiguous to and supposed to be more directly benefited by a proposed railroad, exempting others more remote, or already accommodated with a railroad. It may require a majority of those voting, or a majority of all the votes of the county, or of each district affected, or more than a majority of all, in order to authorize a subscription and tax. While there may be restraints upon the power of the Legislature to impose local burdens for the construction of railroads, or other enterprises projected by and for the benefit of private corporations or individuals, there is and ought to be full legislative discretion and power to prevent unjust, oppressive and improvident taxation for such purposes, against the will of those upon whom the burden principally falls.

Enforced subscription of stock against the will of the minority to be taxed therefor could not be tolerated except upon the assumption that from the investment the tax-payer will receive a return, and that the advantage to the county or district taxed will compensate for the burden imposed. But experience teaches that a return of dividends upon taxes paid to build railroads is generally delusive, while a sense of justice dictates that residents of a county, or portion of a county, already accommodated with a railroad, and having no interest in the new enterprise, should be protected against a reckless and improvident imposition of taxation, by those who will bear no part of the burden, combined with others who are more immediately and directly interested. And, in our opinion, the Legislature has the undoubted power to provide against such injustice by needful restrictions upon the power to tax for such purposes.

The act of 1876 does not confer the apparently undue influence upon those residing outside the limits· of Paris in order to enable them to vote the subscription and tax against the will and to the detriment of those residing inside the limits. For to do so requires a majority of all the votes of the county cast at the election, and in making up such majority the votes of all are of equal weight. But the purpose and effect of the act is to protect the class mentioned against the imposition of taxes, about seven-eighths of which they will have to pay, for the construction of railroads by others, and without their consent, and in which some of them may not have any direct interest. We do not understand how an act thus intended, and

which operates as a mere safeguard against what might be a heavy and unjust local burden, imposed for the immediate benefit of the owners of a railroad charter, can be regarded as the grant of exclusive privileges and emoluments. The statute is intended to protect and conserve the interests and rights of a district or geographical division of Bourbon county, and does not confer, directly or indirectly, a personal privilege at all, much less an exclusive privilege in the meaning of the Constitution.

In our opinion, the act of 1876 is not invalid for either the reasons mentioned, or any other.

The next ground relied on for reversing the judgment is want of jurisdiction in the circuit court, it being contended that the act of the county court complained of is judicial and not ministerial, and that the only remedy of appellees was by appeal to the circuit court.

Section 19 of the act of 1854, under the authority of which the vote was taken and the subscription made, is not mandatory, but merely permissive in its terms, and appellant had no fixed or vested interest in the subscription until after it was made, nor right to demand such subscription. Nor, on the other hand, was it bound to accept the subscription when made. Consequently, there was no opposing or diverse interests or rights for the county court to determine and adjudicate. But the duty was imposed to perform the ministerial act of ascertaining the result of the election, and, as agent of the county, to subscribe or not the stock. The power of the circuit court to declare a subscription of stock made by the county court without authority of law void, and enjoin collection of tax to pay it, has been

often upheld by this court and never denied.  In Bullock v. Curry, 2 Met., 171, this court held that, even after the subscription had been made and bonds issued, the circuit court had jurisdiction to interpose at the suit of tax-payers, and enjoin the collection upon the ground that the county court had no authority to subscribe the stock, because the proposition was not submitted to the voters in the form required by the statute.  Though, it is proper to state the bond-holders were not before the court in that case.  Jurisdiction of the circuit court in such cases was held to exist in Bowling Green and M. Railroad Co. v. Warren County Court, 10 Bush, 711 ; Mercer Co. Court v. Kentucky River Navigation Co., 8 Bush, 300, and Judge of Campbell Co. Court v. Taylor, 8 Bush, 206.  We are, however, referred to the case of Shelby County Court v. Cumberland and Ohio Railroad Co., 8 Bush, 209.  In that case, there was a proceeding by mandamus to compel the county court to issue the bonds, a subscription of stock having already been made, and it was held that the county court, in deciding upon the question of compliance by the company with the various conditions upon which the subscription was voted, and in which another railroad company had an interest, acted judicially.  But in this case there was a subscription without any question being raised or determined in which appellant had an interest or the right to litigate.

In our opinion, the statute of 1876 being valid and in force, the county court had no authority to subscribe the stock in violation of the conditions contained in that act, which was done, and the subscription so made must be held void and of no effect.

Judgment affirmed.

Judge Holt delivered the following dissenting opinion:

If I were in doubt as to what seems to me to be the main question in this case, my high regard for the opinion of the other members of this court would solve it.

However questionable may be the policy of municipal subscriptions to railroads, and other like public enterprises, their legality, when made under legislative sanction, is now, by reason of an unbroken line of decisions extending from the Supreme Court of the United States to that of nearly every State in the Union, beyond doubt. The question of their expediency is for the Legislature, and not the courts. The result of this litigation may vitally affect the interests and future development of a large portion of our State; while, upon the other hand, if the subscription now in question be held valid, it may prove a grievous burden to a particular locality. These considerations, however important, as they are, can not be allowed to produce a particular conclusion, but should induce careful investigation and consideration.

The case of the Shelby County Court v. C. & O. Railroad Company, 8 Bush, 209, renders it at least a doubtful question whether the action of the Bourbon county court in making the subscription was judicial and not ministerial, and, therefore, not subject to question by this character of proceeding. It is also at least questionable whether the second clause of the act of March 18, 1876, is not open to objection by reason of the constitutional provision that no law shall relate to more than one subject, it to be expressed in the title. I pass these questions by, however, as another is to my mind

decisive of the case; and enter upon its discussion, recognizing the well-settled rule that the constitutionality of a legislative act is to be presumed. If a matter of doubt, it is to be so resolved. Slight implication or vague conjecture will not suffice to set it aside upon this ground; but when clearly unconstitutional, it is one of the highest duties of a court to do so, not upon the ground that the judicial power is superior to the legislative, but because its action is in violation of the fundamental law, and it is the duty of the court to so declare.

Under the nineteenth section of the act of 1854, the right of a majority of the voters of Bourbon county to vote the subscription is indisputable. The effect of the act of March 18, 1876, is to so abridge it that no subscription or tax for railroad purposes can be made or imposed upon the property of the county unless a majority of the voters outside of the city limits, as they existed in 1868, vote for it. Such legislation is partial and unequal. It violates not only the spirit of the Constitution but its express provisions, and is destructive of that sense of equality that created it. I concede that the legislative power over the subject is supreme, save as restrained by our Constitution; and that it can impose whatever limitations it pleases, provided they do not violate the fundamental law; but when it creates inequality of privilege, and attempts to say that the vote of one tax-payer shall count, while that of another shall not, when the question relates to the imposition of a tax upon all the property of the county, it passes its constitutional limit. It must be borne in mind that it is a question

whether the burden shall be imposed upon all the property in the county—in the city of Paris, as well as out of it.  It is also a question whether the tax-payer living in one locality as well as in the other, shall have a voice as to the expected benefit to the county to be derived from the building of the road. If the right to vote upon this question is given to one tax-payer, then it must be given to all with like effect and weight.  This is a constitutional right.

The first section of the Bill of Rights provides: "That all freemen, when they form a social compact, are equal, and that no man or set of men are entitled to exclusive, separate, public emoluments, or *privileges* from the community, but in consideration of public services;" while the seventh section says: "That *all* elections shall be free and equal."  It is urged that these grand declarations do not refer to a case like this one; but to offices and political matters or the machinery of government only; and that the vote of the electors is but an agency used by the Legislature to determine whether a conditional law shall become operative.  Also, that the power is not given the privileged class of voters to impose any burden on the others, but merely to cast a negative vote by way of defeating a tax.

The power of taxation is essentially a governmental one.  None affects the elector more.  The legislative acts under consideration make him the controlling power as to the imposition of the tax, and the reception of the expected benefit from the construction of the road.  The right to subscribe for such a purpose, and the implied duty then arising upon the part of the

municipality to pay the subscription by taxation, is based upon the idea that a public benefit is to accrue from it. Each elector is, therefore, interested in the question ; and granting that he is but an agency of the Legislature, yet when it makes him such, and gives him a voice in the matter with another elector as to this question of common benefit, the right must be equal, and the one not privileged above the other.

It is none the less a forbidden privilege or partial legislation, because it merely gives the one the right to defeat the imposition of a tax, and puts no burden upon the other. It does create an inequality of privilege, and an unequal voice in the matter, because it says that the one may defeat the expected common benefit without regard to the wish of the other elector, and it is not, therefore, a mere shield. Thus, although there may be a majority of a thousand votes in the city of Paris for a measure which concerns them as much as the balance of the county, yet a majority of one vote in the territory outside of the city controls—one vote overcomes a thousand where all are equally interested. Upon the other hand, suppose the city votes a thousand majority against it ; yet, if upon a count of the entire vote of the county there be one majority for it, the subscription must be made. The act in question, however, goes farther than this. It does not merely disfranchise electors as to a matter of common interest, but it creates an inequality of privilege among the tax-payers or persons standing upon the same footing. Of course the Legislature may say that one precinct in a county shall alone vote upon such a question, upon the idea that it alone will reap the expected benefit ; but in such a case the

tax must be imposed upon it alone.    Grant also that the
Legislature may require the assent, for instance, of two-
thirds of the tax-payers of the county before a subscrip-
tion can be made.    Yet in this instance, the vote of the
tax-payer in one locality of a county, teh whole of
which is to be affected by the imposition of the tax or
benefited by the building of the road, is omnipotent to
defeat the votes of the tax-payers in another portion
of the county.    In fact, they do not count at all, if he
votes differently.    A majority of one outside of the
limits of the city of Paris, and which vote may be cast
by one who is not a tax-payer, renders nugatory the
votes of all the tax-payers in the city.    Thus an une-
qual effect is not only given to the votes of the electors,
but to those who are tax-payers.    The idea that one
vote may in effect disfranchise hundreds of electors
equally interested in the question is, to my mind, ut-
terly inconsistent with that equality of right which is
the life of our Constitution.

There are other objections to the act of March 18,
1876.    The taxation of real estate for local purposes
depends upon its *situs*, and not the residence of the
owner.    Under the act of 1854, the city of Paris may
subscribe stock in the road, and the owner of city prop-
erty, although resident elsewhere, must pay the tax.
The act of 1876, however, provides that no tax shall be
imposed upon the property of those *residing* outside of
the city, unless a majority of the voters residing with-
out the city limits vote for it.    Thus the right to tax is
made to depend upon the residence of the owner, and
not upon the location of the property ; and if the city
were to take stock in the road, as it may do under the

act of 1854, yet if A owns one-half of the property in the city, but resides elsewhere in the county, it is not taxable, thus creating inequality of taxation.

Again: the act of 1876 provides that a majority of the votes outside of the city limits, as they existed in 1868, is to govern, and not as they may exist at the time of taking the vote. It appears that these limits were larger in 1868 than now; and it results that those living between the two lines are residents of the county and not of the city, save when a vote is to be taken as to a subscription to a railroad, and then they are city residents. In this way electors, who in fact live in the country and not in the city, are in effect disfranchised. The will of the majority who now in fact live outside of the city may be defeated by a majority of one vote of those who resided outside of the city limits in 1868; and yet those living between the two lines must help to bear the burden if a tax be imposed, and are equally interested in the expected benefit.

Entertaining these views, I regret that I can not concur with my associates in an affirmance of the case.