BRECKINRIDGE COUNTY v. McCRACKEN et al. (two cases).

(Circuit Court of Appeals, Sixth Circuit. March 6, 1894.)

Nos. 113 and 142.

1. RAILROAD COMPANIES—MUNICIPAL AID—PARTS OF COUNTIES.
The charter of a railroad company (Act Ky. Feb. 24, 1888) provided that any county through which it might pass, or any magisterial precinct or precincts of such county, might subscribe to its capital stock (section 9); that, when any precinct or precincts made such subscription, bonds of the county should be issued, showing on their face the precincts making the subscription, which alone should be bound to pay the bonds (section 10); and that its provisions should not apply to a defined portion of R. precinct in a county named (section 19). *Held*, that the residue of R. precinct, not excepted from the provisions of the act, might join with another precinct of such county in making a subscription, and joint bonds be issued therefor.

2. SAME—BONDS—TAXES TO PAY—ASSESSMENT.
The charter of a railroad company (Act Ky. Feb. 24, 1888) authorized the magisterial precincts of counties through which it should pass to subscribe to its capital stock (section 9), and provided that such subscriptions should be paid by taxes levied in such precincts alone. Such a subscription was made jointly by one precinct and part of another, the residue having been expressly excepted from the operation of the charter. *Held*, that the assessor might be required to list separately the property of the district making such subscription, and liable to a tax therefor, under Acts Ky. 1891-93 (volume 1, p. 283, § 4), which requires him to make separate books for each "taxing district of his county, by wards or other subdivisions, as convenience may require."

3. SAME—DELIVERY—CONDITIONS.
Act Ky. April 9, 1873, which provides that, before county bonds issued in aid of a railroad are delivered, the president of the road shall give bond for the faithful application of their proceeds to the construction of the road, has no application where the road has been completed before the bonds are delivered.

**4. SAME—ACTION ON BONDS—PLEADING.**
In an action on, railroad aid bonds, a simple allegation in the petition that "an election was duly held" to determine whether the subscription should be made is sufficient; and any irregularities in the mode of holding such election are matters of defense.

**5. SAME—RESERVATION IN BONDS.**
In an action on county bonds issued in aid of a railroad, plaintiff need not allege a reservation made in the bonds by the county as to the time of payment, where there was no such reservation in the act authorizing the subscription, for the power to issue the bonds was in no wise affected thereby.

**6. SAME—COUNTY BONDS—JUDGMENT.**
The charter of a railroad company (Act Ky. Feb. 24, 1888) authorized magisterial precincts of any county through which it passed to subscribe to its capital stock (section 9), and provided that the bonds of the county should be issued in payment of such a subscription in every respect as if such subscription was made by the county, but that such precincts should be alone bound to pay such bonds (section 12). *Held,* that the county is liable to actions on such bonds, but judgment against it is to be satisfied out of a tax levied on such precincts alone.

In Error to the Circuit Court of the United States for the District of Kentucky.

The case first named was a suit brought by McCracken and others, partners under the name of W. V. McCracken & Co., and citizens of the state of New York, against the county of Breckinridge, one of the counties of the state of Kentucky. The subject-matter of the suit was 180 coupons of $30 each, being for three installments of interest accruing upon certain bonds issued by the defendant county as obligor for certain unincorporated precincts of said county. The county filed a general demurrer to the petition of plaintiffs, which being overruled, it declined to further plead. Thereupon, the circuit court rendered a special judgment against the county, to be paid only by levy and collection of a tax upon the property of the tax districts for which the bonds had been issued. Subsequently, a petition for a writ of mandamus was filed, by which it was sought to compel the levy and collection of a special tax upon the property of the precincts issuing the bonds to pay off that judgment. The county answered this petition. A demurrer to the answer was interposed and sustained. The county refusing to further plead, the circuit court granted a writ of mandamus as prayed. The county of Breckinridge has sued out a writ of error in each case.

The bonds in question were issued to the Louisville, Hardinsburg & Western Railway Company in payment of a subscription to the capital stock of that company of $60,000, made by the Hardinsburg and Rough Creek precincts, except a definite part of the latter especially excluded under the act authorizing the subscription, they being precincts of Breckinridge county. The charter of said railway company was granted February 24, 1888. The parts which affect the questions to be decided are sections 9, 10, 12, 14, and 19, and are as follows:

"Sec. 9. That any county through which the Louisville, Hardinsburg and Western Railway, or any branch or branches of same, may be constructed or propose to be constructed, and any cities, towns or magisterial precinct or precincts of said counties, may subscribe to the capital stock of the said railway company, as herein provided and may pay therefor in the negotiable coupon bonds of said counties, cities, towns or magisterial precinct or precincts payable not more than thirty (30) years after date, and bearing interest at a

rate not exceeding six per cent per annum, payable semi-annually, and which bonds and interest shall be payable at a place designated therein.

"Sec. 10. Whenever application shall be made to the county judge with reference to counties or parts of counties, or to the city council with reference to cities, or town trustees in reference to towns, by said railway company, requesting that the question of subscribing to the capital stock of said railway company, upon the terms and conditions set forth in said application, be submitted to a vote of the legal voters of said county, part of county, city or town, the county judge, when directed so to do by a majority of a county court composed of the justices of the peace in commission, living within the bounds of the territory in each county to which the question of taxation shall be submitted, it being in the discretion of said justices of the peace to so submit or not; and the city council or town trustees to whom said application is addressed may, in their discretion, order an election to be held in such county, part of county, city or town, as the case may be, on a day named in the order (not later than fifty days after the making of said order), to ascertain the sense of the legal voters in the territory to be affected upon the question of making such subscription, and to cause notice thereof to be published in such county in a newspaper published therein not less than thirty days, and to be posted at the court-house door in such county and at such other public places therein as may be directed by said order; and at such election votes shall be received (for the railway subscription and against the railway subscription). Officers of such election shall, when the territory to be affected is a county or magisterial precinct or precincts therein, be appointed and hold such election, and make return thereof to the county judge thereof in the manner provided in ordinary county elections; and when the territory to be affected is a city or town, in the manner provided for officers of elections in cases of city or town elections."

"Sec. 12. Whenever any magisterial precinct or precincts in any county shall subscribe to the stock of said company, under the provisions of this act, it shall be the duty of the county judge and clerk of such county to sign, execute, issue or deliver the bonds of such precinct or precincts in payment thereof, in every respect as if such subscription had been made by the county, except that the bonds shall show on their face the precinct or precincts for which they are issued, and such precinct or precincts shall be alone bound to pay said bonds and their interest."

"Sec. 14. An annual tax sufficient to pay the semi-annual installments of interest on such bonds, and the principal, when it shall become due, shall be collected and paid out by the officers of such county, city or town, as provided in the case of other county, city or town taxes."

"Sec. 19. Provided, the provisions of this act shall not apply to the magisterial district of Bowleyville, Cloverport, Union Star or Hudsonville, in the county of Breckinridge, nor to any city or town embraced therein, nor shall its provisions apply to that portion of the Forks of Rough or McDaniel's magisterial district, in Breckinridge county, included within the following boundary, to-wit: Beginning at the mouth of the North Fork of Rough creek; thence up the same to the mouth of Calamese creek; thence up said creek to the line between Hudsonville and McDaniel's voting precinct; thence with said line to the South Fork of Rough creek to the beginning. The provisions therein in reference to the Union Star," etc.

J. Proctor Knott and T. J. Edelen, for plaintiffs in error.
David W. Fairleigh and James P. Helm, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

LURTON, Circuit Judge (after stating the facts as above). A number of objections have been urged as operating to avoid liability upon the coupons in suit, which will be considered in such order as is most convenient.

The first and most serious defense is as to whether the act authorizing a subscription to the stock of the Louisville, Hardinsburg & Western Railway Company, by the "magisterial precincts" of any county through which that road should be constructed, authorized a joint subscription by two precincts, or by one and a fraction of another. A justice's district, or "magisterial precinct," is a local subdivision of a county, and has no corporate autonomy. Its boundaries are fixed by the county court, and serve to define the territorial jurisdiction of justices of the peace and constables. It generally constitutes an election district, and the county assessment rolls are made out by precincts, as is the case with the wards of cities. The relation of such a precinct to the county under the law of Kentucky is substantially that of a ward to a city. While not an autonomous, self-governing body, it is a geographical and semipolitical entity. There can be no serious question, under the decisions of the supreme court of Kentucky, that the legislature of that state has the constitutional power to authorize any subdivision of a county to subscribe for the stock of a railway company, and to issue bonds in payment of such subscription. So it may authorize a county to impose a special tax on the district making such subscription, and issuing such bonds, to pay the interest and principal thereof. To this end the legislature may create a political district with corporate powers, or it may authorize magisterial districts, constable districts, or carve out a special district, and confer authority upon such territory by vote to charge such district with a subscription. So it may empower the county, of which such district is a part, to issue such bonds in behalf of the territory empowered to charge itself, the bonds to be payable only out of taxes levied and collected from the taxables of that tax district. The Kentucky decisions clearly settle these propositions. City of Lexington v. McQuillan's Heirs, 9 Dana, 513; County Judge of Shelby Co. v. Shelby R. Co., 5 Bush, 226; Kreiger v. Railroad Co., 84 Ky. 66; Allison v. Railway Co., 10 Bush, 1; Carter Co. v. Sinton, 120 U. S. 518, 7 Sup. Ct. 650; Hancock v. Railroad Co., 145 U. S. 414, 12 Sup. Ct. 969.

The contention here involves solely a construction of the act under which the coupons in suit were issued. The contention of appellant is: (1) That the charter in question only authorized a subscription by separate action of each precinct desiring to aid in the construction of the road authorized by the charter; that an election jointly held by two or more districts or precincts, and bonds issued by two districts acting as a unit, would not be a valid exercise of any power conferred by the charter. (2) That, even if two entire precincts could combine for such a purpose, it was not lawful for a portion of Rough Creek precinct to combine with the Hardinsburg precinct. A careful reading of the sections heretofore set out seems to indicate that the parts of the county subscribing should act together as a taxing district, and that but one election was contemplated. That part might be but one precinct, or it might be several. The territory to which the proposition was to be submitted might embrace all the precincts permitted by the charter to subscribe, or it might embrace but one or two of the whole number entitled to

contract. This we think is observable particularly in the tenth and twelfth sections. In the tenth section the term "parts of a county" is used synonymously with precinct or precincts. In the twelfth section the issuance of bonds by more than one precinct co-operating as a taxing unit is clearly contemplated. It provides that the bonds to be issued by the county judge and county clerk should be "in every respect as if the subscription had been made by the county, except that the bonds shall show on their face the precinct or precincts for which they are issued, and such precinct or precincts shall be alone bound to pay said bonds and their interest." The power existed in the legislature to arbitrarily carve out a geographical district, and authorize its inhabitants to exercise the functions of a corporation, either through agencies created by themselves or through the agencies of the county. It was not essential, under the decisions of the Kentucky court, that precinct lines should be regarded in conferring the power and functions of subscribing for stock. It is therefore only a question as to what the legislature has done in this instance. Did it require each precinct to act separately, or may they co-operate? We think the construction put on this act when the affected territory acted was entirely reasonable, and supported by the letter, as well as the spirit, of the legislative grant. By the nineteenth section certain precincts and towns, and a definite part of Rough Creek precinct, were excepted out of the provisions of the act. The clear meaning was that the excepted precincts and parts of precincts should not be within the terms of the act so far as it would otherwise authorize them to subscribe for stock in that road. By excluding a part of Rough Creek precinct it was clearly implied that the unexcluded part should constitute a territory authorized to subscribe to the stock and issue bonds in payment. The remainder of that precinct constituted the precinct, for the purpose of the act.

2. The next objection is that no power is conferred to assess a tax to pay either the interest or principal of the bonds to be issued, and that, therefore, no authority to issue the bonds or subscribe for the stock has been conferred. To support this proposition, counsel rely upon a dictum to that effect in Kentucky Union Ry. Co. v. Bourbon Co., 85 Ky. 111, 2 S. W. 687. The same principle was laid down by Mr. Justice Miller in Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 660, when it was said that "the validity of a contract which can only be fulfilled by a resort to taxation depends on the power to levy the tax for that purpose." The language was applied in a case where the validity of bonds was in question issued by the city of Topeka to aid a private manufacturing establishment. The court said, as such bonds could only be paid by taxation, they were void unless taxes might be constitutionally levied for the purpose of aiding a purely private enterprise. Here we have no such question, for, under the constitution of Kentucky, taxes may be levied to aid a railway line, it being deemed a public enterprise. There can be in this case no serious doubt but that the power to assess a special tax upon the property in the affected district has been conferred on the county court of Breckinridge county for the purpose

of paying off the interest and principal of these bonds. Section 14 of the charter provides that "an annual tax sufficient to pay the semiannual installments of interest on such bonds, and the principal when it shall become due, shall be collected and paid out by the officers of such counties, city or towns, as provided in the case of other county, city or town taxes." The criticisms on this provision are (1) that no means are provided, and none existed before, for ascertaining the amount of taxable property in the unorganized district; (2) that in attempting to confer the taxing power it does so by referring to a criterion which has no existence in law. We think these objections quite untenable. The power to assess, levy, and collect a tax would be necessarily implied from the power to create the debt, there being nothing in the act indicating an expectation that payment should be made in any other way, and no constitutional obstacle, either in the character of the debt or to the granting of such power by the legislature, being suggested. Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 656; Ralls Co. v. U. S., 105 U. S. 735; Quincy v. Jackson, 113 U. S. 335, 5 Sup. Ct. 544. The purpose that this debt shall be paid by taxation is made clear. That no general authority exists to levy an ad valorem tax for general county purposes is not important. The power to assess and levy a special ad valorem tax is by implication clearly conferred in section 14, to say nothing of the implication which results from the grant of power to create the debt and issue the bonds. The answer of the county to the petition for a writ of mandamus sets up as a defense that there has been no separate assessment of the property in the district issuing these bonds. The assessment for the purposes of state taxation has been made upon all taxable property in each of the two precincts of Hardinsburg and Rough Creek. The point is that, as a part of Rough Creek is excluded by section 19 of the act, the county court has no means of eliminating from the roll the taxables in that district which are liable to a special levy to pay this judgment from those not subject to such a burden. The duty of the assessor is defined by the Kentucky act of November 11, 1892 (volume 1, Acts 1891–93, p. 283). Sections 4 and 12 of article 2 of the act are as follows:

"4. The assessor shall commence the duties of his office on the fifteenth of September of each year, and he shall assess his county by justices' districts, in separate books, and he shall also make a separate book or books for each incorporated city, town, or taxing district (except school districts) of his county, by wards or other subdivisions, as convenience may require."

"12. The assessor shall make out his tax book in a fair, legible handwriting, in alphabetical order, according to justices' districts and incorporated cities, towns, and taxing districts therein, and make additions of each column so as to show the aggregate amount, value, and number of each column in said tax book, and prove the accuracy before he returns the same."

That act was fully applicable to this case, as by section 16 the assessor was required to commence the duties of his office September 15, 1892. Under the law of Kentucky a single assessment serves the purpose of both state and county. By the act of October 17, 1892 (volume 1, p. 270, Acts 1891–93), it is provided that:

"The fiscal courts shall hold their sessions at the county seats of their respective counties, and shall have jurisdiction to levy each year for county pur-

poses a poll-tax on each male inhabitant of the county, over twenty-one years of age, not exceeding one dollar and fifty cents, and an ad valorem tax on all property subject to taxation within the county, whether belonging to natural persons or corporations, companies or associations, not to exceed fifty cents on each one hundred dollars in value as assessed by state processes, unless an additional tax be required to enable the county or taxing district thereof to pay the interest on and provide a sinking fund for the extinction of indebtedness of the county or district created prior to September twenty-eight, one thousand eight hundred and ninety-one; and for that purpose the fiscal court shall have jurisdiction to levy such additional tax as may be authorized by law in force prior to September twenty-eighth, one thousand eight hundred and ninety-one, and shall superintend the collection of all such tax."

Under these statutes we think that it was the duty of the assessor to assess his county by justices' districts, and to make a separate book or books for each "taxing district of his county, by wards or other subdivisions, as convenience may require." The debt here involved was created by law, and a levy authorized by law, in force before September 28, 1891; and that under the act of October, 1892, above set out, it has the power to require an assessment book to be separately drawn off by the assessor of the taxables in the district liable for these bonds, and to have levied such additional tax as was necessary to pay the accrued interest on these bonds.

3. It is next objected that these bonds were delivered by the county judge without requiring the president of the railway company to execute a bond, as required by the Kentucky act of April 9, 1873, conditioned that their proceeds should be faithfully applied to the object for which they were issued. Without considering the effect of the failure of the county judge to require such a bond upon the bonds themselves, in a case where the act was applicable, we are of opinion that the act had no application in this case. These bonds were never delivered until the road had been constructed and trains passed over it. Pending the construction, they were placed in escrow, to be delivered only when the road should be finished. When delivered to the president of the company, the road had been fully constructed, and there was no reason for the application of the act, the purpose of which was to protect the subscription by compelling the application of the bonds to purposes of construction.

4. It is next objected that the petition is insufficient on its face, in that it is not shown that the notice of election was given for the time, and in the manner, prescribed by section 10 of the railway company's charter. The allegation of the petition is that the election required "was duly held." This is substantially an averment that the election was held according to the requirements of the law. It was not, however, important that the pleader should aver the preliminary facts requisite to the exercise of the power granted by the legislature to subscribe for the stock and issue bonds in payment. The power to hold an election, subscribe for stock, and issue the bonds is averred. If there was any defect in the steps preliminary to the exercise of that power, it is for the defendant to plead and show such irregularity. The performance or nonperformance of acts requisite to the valid exercise of the

power are matters of defense. This precise question arose in Lincoln Tp. v. Cambria Iron Co., 103 U. S. 412. The declaration in a suit upon certain bonds issued by a Michigan township did not aver that an election was held to authorize the issuance of the bonds, as required by law, and did not aver certain other prerequisites to such issue. After considering the effect of a verdict for the plaintiff as a waiver of such objection to the pleading, the court said:

"But we do not think that there was any defect in the declaration to be cured. We think that it would have been good on demurrer. The township had authority by law to issue its bonds by way of a donation to a railroad. It did issue its bonds. They got into circulation as commercial securities, and were purchased by the plaintiff. All the plaintiff had to do in case of nonpayment was simply to sue on the bonds. If there was any defense to them by reason of want of performance of any of the requisites necessary to give them validity, or for any other cause, it was for the defendant to show it. A bond, especially a negotiable bond, is a prima facie obligation of the obligor if he has capacity to make it, and is binding according to the terms and conditions apparent on its face until the contrary be shown. Whether an alleged defense, when set up, is or is not good against the particular holder, is to be determined by the court in each case." 103 U. S. 416.

The case of Hopper v. Town of Covington, 118 U. S. 148, 6 Sup. Ct. 1025, is relied upon by appellant. It is not in point. The defect in the declaration went to the power of the corporation. In that very case the court drew a distinction between the want of power and an irregularity in the exercise of a power. See, also, County of Clay v. Society for Savings, 104 U. S. 586.

The next objection is of like character. The subscription made by the county, as shown by the exhibit filed with the bill, required that the bonds should be issued, reserving to the districts the right to pay them off after five years from their date. It is objected that the petition does not aver that the bonds issued contained any such reservation. No bond is filed with the petition, nor any copy of one. Whether, as matter of fact, such a reservation appeared on the bonds, does not appear. No such requirement is contained in the act. That provision was part of the contract between the company and the district subscribing. We do not think that it was incumbent on the plaintiff to make any averment as to that provision. It did not involve the power of the district to subscribe and issue bonds. It was matter of defense to be set up by answer.

5. Finally, it is objected that the county is not liable on these bonds, and it was error to have rendered judgment against the county. The districts subscribing were not corporations, and could not, without further legislation, execute and deliver bonds. Some one could be authorized to become the obligor. This duty was imposed on the county. This was authorized under the Kentucky decisions before cited. That the charter of the Louisville, Hardinsburg & Western Railway Company contemplated that the county should execute the bonds when the subscription was by a precinct or other subdivision of the county is to us very clear. Section 12 provided that in such a case the bonds of the precinct or precincts should be signed, executed, and delivered by the county judge and county court clerk, "in every respect as if such sub-

scription had been made by the county, except that the bonds shall show on their face the precinct or precincts for which they are issued, and such precinct or precincts shall be alone bound to pay said bonds and their interest." While the district subscribing is the debtor, yet in form the county is the obligor. Through the county the indebted district is to act, and through the same agency the indebted district is to be coerced by the assessment of the tax essential to meet its obligations. Such a district becomes, for the purposes of the subscription, a corporation quoad hoc. Kreiger v. Railroad Co., 84 Ky. 66; Hancock v. Railroad Co., 145 U. S. 409, 12 Sup. Ct. 969. It is suable only through the county, which, in respect to the subscription, the issuance of the bonds, and the assessment of a special levy, stands for and represents the debtor. The judgment was properly rendered against the county, collectible only from tax levied on property in the indebted district. The charter, in this respect, is substantially like the provision construed in Davenport v. Dodge Co., 105 U. S. 237. The special judgment rendered by the circuit court was like that approved in the same case. The result is that the judgment of the circuit court in each case must be affirmed.