FULLER et al. v. AYLESWORTH.

(Circuit Court of Appeals, Sixth Circuit.   July 8, 1896.)

No. 408.

1. APPEAL BONDS—AMOUNT.
    Sup. Ct. Rule 29 (3 Sup. Ct. xvi.), requires supersedeas bonds, conditioned that the writ of error or appeal shall be prosecuted to effect, to be, where the judgment or decree is "for the recovery of money not otherwise secured," for the whole amount of the judgment or decree, including just' damages for delay and costs and interest on the appeal. *Held*, that a judgment rendered against a county for the amount of certain drain warrants, with a provision for mandamus to compel the levy of assessments according to law upon the lands benefited by the drains, was one "for the recovery of money not otherwise secured."

2. SAME—MONEY JUDGMENT.
    A "judgment for the recovery of money" is one which adjudges a defendant, either as an individual or in a representative capacity, absolutely liable to pay a sum certain to the plaintiff, and awards execution therefor, and which may be fully satisfied by the defendant by paying into court the amount adjudged, with interest and costs; and the fact that the judgment does not involve the personal liability of the defendant is immaterial.

3. SAME—JUDGMENT OTHERWISE SECURED.
    A judgment is "not otherwise secured," within the meaning of the rule, when the court has not, by reason of a lien on property secured to plaintiff otherwise than by the judgment, or by reason of actual custody of property liable to satisfy the claim asserted, the means of making the claim of the plaintiff by subjecting specific property.

**4. SAME.**

> The circuit court may, as the condition of a review by the supreme court of a judgment on drain bonds against a county as the representative of the persons liable for the amount of the bonds, require a bond, with sureties, conditioned for the payment of the amount of the judgment, though the county itself is not liable for such payment.

**5. SAME—JUDGMENT ON BOND.**

> In such case judgment may be obtained on the bond immediately upon the affirmance by the supreme court of the judgment appealed from, and it is not necessary to wait till a levy can be made by the county to pay the judgment.

Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is a writ of error to review a judgment of the circuit court for the Eastern district of Michigan for $7,053.01 in favor of Henry M. Aylesworth against the obligors on the following supersedeas bond:

"Know all men by these presents that we, M. McVeigh, W. Kuhlman, B. Sharp, S. Hile, Chas. Shafer, L. J. Fuller, T. Lewis, W. C. Stone, N. B. Johnson, J. F. Innes, W. A. Furman, J. S. Parker, H. C. Burlingame, all of the county of Gratiot, state of Michigan, are held and firmly bound unto Henry M. Aylesworth, of New York state, in the sum of ten thousand five hundred dollars, lawful money, to be paid to the said Henry M. Aylesworth, his executors, administrators, or assigns; for which payment, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents. Sealed with our seals, and dated the 13th day of October, A. D. 1890.

"Whereas, judgment has been rendered in the circuit court of the United States for the Eastern district of Michigan in favor of said Henry M. Aylesworth and against the county of Gratiot for five thousand one hundred and twenty dollars and fifty-six cents, damages and costs taxed to forty-five dollars and twenty-seven cents, which is to be collected by assessments of tax upon certain lands in Arcada, Newark, and New Haven townships, in said county, in which judgments and proceedings the said county of Gratiot complains that there is error in substance, and to be relieved therefrom has obtained a writ of error to remove the same to the supreme court of the United States to the end that said errors may be corrected: Now therefore, the condition of this obligation is such that, if the said county of Gratiot shall prosecute its said writ of error to effect, and shall pay and satisfy such judgment as shall be rendered against it upon said writ of error in said supreme court, then this obligation to be void; otherwise to remain in full force and effect.

| | | | |
|---|---|---|---|
| "Warner C. Stone. | [L. S.] | Solomon Hile. | [L. S.] |
| "Lovell J. Fuller. | [L. S.] | Milton McVeigh. | [L. S.] |
| "John S. Parker. | [L. S.] | Thomas Lewis. | [L. S.] |
| "Henry C. Burlingame. | [L. S.] | Charles Shafer. | [L. S.] |
| "Wilmarth A. Furman. | [L. S.] | Benjamin Sharp. | [L. S.] |
| "John F. Innes. | [L. S.] | Nathaniel B. Johnson. | [L. S.]" |
| "Arthur W. Lewis. | [L. S.] | | |

The court below held that the lawful effect of the bond was to require the obligors to pay the full amount of the judgment which was superseded, and so charged the jury. The obligors' counsel contended that there was no authority under the law to exact a bond of this kind, because the judgment was merely an order for mandamus, and that the plaintiff, having shown no damage by the delay, was entitled to nothing more than his costs expended on the appeal, the words in the bond to the contrary notwithstanding. The original judgment which was superseded was rendered by the court

below on certain drain warrants issued in pursuance of Act No. 43 of the Michigan Laws of 1869, as amended by Act No. 169 of the Law of 1871. The force and effect of this act and the character of the warrants are shown in the following passage from the opinion of Mr. Justice (then Judge) Brown in rendering the original judgment (Aylesworth v. Gratiot Co., 43 Fed. 350, 353):

"As the authority of the drain commissioner to draw these orders is unquestioned, it is evident that there must be a remedy in favor of the payee or holder against some one for payment. It is an axiom of the law that for every wrong there is a remedy. It is evident, however, there can be no remedy against the commissioner, as he has no corporate powers, and as he is required by law to draw these orders upon the county treasurer in behalf of the contractor, but has no power to enforce the collection of the tax, or to provide in any other way for their payment. It is equally clear that the county treasurer is not bound to pay them unless he has the funds, and that no action will lie against him unless he refuses to disburse moneys actually in his hands for that purpose. An examination of the statute, we think, demonstrates that there is an obligation on the supervisors representing the county that they can only discharge by an assessment and collection of the tax. By section 1 of the drain law of 1869, as amended in 1871, the board of supervisors of each county is authorized to appoint one county drain commissioner, who is required by section 3 to execute the duties of his office and the resolutions and orders of the board of supervisors. He is bound to keep a full record of his official acts in a book to be furnished by the county, to draw all proper orders on each drain fund, to report to the board of supervisors his action in relation to each drain, and file the same with the clerk. Orders drawn by him must be countersigned by the chairman and clerk of the board. By section 4, on application to him by 10 or more owners of land in each township, he is required to make examination by surveys, and to determine the route of any drain they may require, and may have the assistance (section 6) of a court of record for the appointment of special commissioners to examine the property, and the necessity for the construction of such drain. By section 11, he shall make a full report of all his doings, and present the same to the board of supervisors at their next annual meeting. This board shall charge the apportioned sum against each township, and direct the supervisor of each township to levy the same upon the several parcels of land benefited by the drain. By section 12, the county treasurer is charged with the duty of returning all lands upon which a tax shall be levied and not paid to the auditor general, and the same shall be advertised and sold, and, if bid off to the state, the state treasurer shall pay over to the county treasurer the amount of the taxes. By section 15, whenever such tax shall be set aside by any court of competent jurisdiction, it shall be lawful for the supervisor to reassess such tax on the same land where such drain has been made, and in case of any mistake or misapportionment of taxes, the board of supervisors, upon the recommendation of the drain commissioner, or upon a review before them had by appeal from the action of the drain commissioner, may reassess upon the various lands or portions of lands such amount of drainage taxes as may be necessary to correct such mistake or misapportionment. By section 17, no money shall be paid by any county treasurer except on a warrant drawn by the commissioner and countersigned by the chairman and clerk of the board of supervisors, and then only from the particular fund provided for each ditch. If there be no funds in his hands, the county treasurer must indorse the date of the presentation of the orders with his signature thereto, and his orders shall draw interest from and after such presentation and indorsement. Section 19. By section 24 the board of supervisors has full power and authority to control the action of the commissioner, and may order reassessment of the drain tax, or any portion thereof, to correct errors, and may make any other order in relation to such ditches or drains as may be necessary. By section 33, the most ample powers are conferred upon courts to make such orders as shall be just and equitable, and may order such tax to remain on the roll for collection, or order the same to be levied, or may

enjoin the same, or may order the whole, or such part thereof as may be just and equitable, to be refunded. It is evident that under this act ample powers are conferred on the board of supervisors with regard to the assessment and collection of these taxes, and in case of any dereliction of duties on their part there ought to be a remedy against the corporation of which they are the authorized expression and agent. As before observed, the proper remedy in the state court is by writ of mandamus. As this court is incompetent, in the first instance, to afford this relief, we think an action may be brought against the county, and the collection of the judgment enforced by the same process of mandamus that would be resorted to if the proceedings had been instituted in the state court."

The judgment which Mr. Justice Brown rendered was as follows:

"The jury by whom the issue in this case was tried having rendered a verdict therein in favor of the plaintiff and against the defendant, and having assessed the damages of the said plaintiff on occasion of the premises at the sum of forty-eight hundred and sixty-eight dollars and seventy-four cents ($4,868.74) over and above his costs and charges by him about his suit in that behalf expended, therefore it is considered that the said plaintiff do recover against the said defendant his damages by the jurors aforesaid in form assessed, and the interest thereon from the rendition of said verdict, November 30, 1889, amounting to the sum of two hundred and fifty-one dollars and eighty-two cents; in all, on this day, five thousand one hundred and twenty dollars and fifty-six cents, together with his costs and charges to be taxed; and that a writ of mandamus shall issue to the board of supervisors of said county directing that the amount of said damages, interest, costs, and charges shall be levied and assessed as follows: Twenty-nine hundred and forty-one dollars and ninety-three cents ($2,941.93) on lands in the township of Newark, in said county, benefited by the Newark & Arcada ditch; six hundred and eighty dollars and twenty-four cents ($680.24) on lands in the township of Arcada, in said county, benefited by Newark & Arcada ditch; and twelve hundred and forty-six dollars and fifty-seven cents ($1,246.57) on lands in the township of New Haven, in said county, benefited by the Newark & New Haven ditch. As to the interest, costs, and charges, the amount shall be levied and assessed on said several classes of land in the same proportion as said damages are levied and assessed according to the statutes in such case made and provided and not otherwise."

A writ of error was allowed, and the supersedeas bond above set forth was filed. The case was heard in the supreme court, and the judgment was affirmed by an equally divided court, and the mandate issued to the circuit court, commanding that "such execution and proceedings be had in said cause as according to right and justice and the laws of the United States ought to be had, the said writ of error notwithstanding." Upon receipt of the mandate in the circuit court, it was ordered "that the said plaintiff have execution of his judgment and costs and interest, * * * and take such other steps in this cause as he may be advised."

George P. Stone and Kelly S. Searl, for plaintiffs in error.

Thomas S. Jerome, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts). Section 1000 of the Revised Statutes of the United States makes the following provision for supersedeas bonds:

"Every justice or judge signing a citation on any writ of error, shall except in cases brought up by the United States or by direction of any department of the government, take good and sufficient security that the plaintiff in error or the appellant shall prosecute his writ or appeal to effect, and

if he fail to make this plea good, shall answer all damages and costs, where the writ is a supersedeas and stays execution, or all costs only where it is not a supersedeas as aforesaid."

Rule 29 of the supreme court (3 Sup. Ct. xvi.), adopted to prescribe the manner of carrying out the foregoing section, is as follows:

"Supersedeas bonds in the circuit courts must be taken, with good and sufficient security, that the plaintiff in error or appellant shall prosecute his writ or appeal to effect, and answer all damages and costs if he fail to make his plea good. Such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree including just damages for delay, and costs and interest on the appeal; but in all suits where the property, in controversy necessarily follows the suit, as in real actions, replevin, and in suits on mortgages, or where the property is in the custody of the marshal under admiralty process as in case of capture or seizure, or where the proceeds thereof, or a bond for the value thereof, is in the custody of the court, indemnity in all such cases is only required in an amount sufficient to secure the sum recovered for the use and detention of the property and the costs of the suit, and just damages for delay and costs and interest on the appeals."

The main controversy in this case is whether the judgment against Gratiot county which was superseded was "a judgment for the recovery of money not otherwise secured." If it was, then clearly the bond taken was in proper form, and rendered the sureties liable for the whole amount of the judgment in the circuit court. It is strenuously urged by counsel for the plaintiffs in error that the judgment is in reality not for money, but only for an order of mandamus on county officers to make a levy upon lands in certain specified townships; that the county is in no sense responsible as a debtor for the amount established to be due, and that the only amount recoverable under the statute, and embraced by a lawful supersedeas bond, is for costs and damages for delay, which are not shown. It is settled by a long line of decisions of the supreme court that the circuit courts of the United States have no jurisdiction to consider and decide a suit for a mandamus to compel the discharge of a statutory or other duty except for the purpose of enforcing their judgments previously rendered. The result was reached by a construction of the eleventh and the fourteenth sections of the judiciary act, which now appear in the Revised Statutes as sections 629 and 716. The former confers on circuit courts original jurisdiction "of all suits of a civil nature at common law," and the latter provides "that such courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." The supreme court was of opinion that while, if the eleventh section of the judiciary act was not accompanied by the fourteenth, a mandamus proceeding might be properly regarded as a suit of a civil nature at common law, the presence of section 14 in the same act, providing for the issuance of such a writ as an ancillary writ, indicated that the words of section 11 were to be given a narrower construction, and one which would not include suits in mandamus. Hence the uniform ruling of the supreme court has been that, even in states

where by statute it is specifically provided that a mandamus may be issued against public officers to levy a tax to pay a public debt without other proceeding than an application for mandamus and a hearing thereon, such a statute does not apply to a circuit court of the United States, and that in those courts a judgment against the corporation, liable for the debt must be rendered before a mandamus will issue. Bath Co. v. Amy, 13 Wall. 244; Graham v. Norton, 15 Wall. 427; County of Greene v. Daniel, 102 U. S. 187–195; Davenport v. County of Dodge, 105 U. S. 237; Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633. It follows that the writ of mandamus in the circuit courts is never an independent suit, as it is in many states and in England, but it is only "a proceeding ancillary to the judgment which gives the jurisdiction, and when issued becomes a substitute for the ordinary process of execution to enforce the payment of the same as provided in the contract." Riggs v. Johnson Co., 6 Wall. 166, 198. In County of Greene v. Daniel, 102 U. S. 187, 195, it is said to be in the nature of an execution to carry the judgment into effect. In Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 635, the court said: "The issue of the mandamus is an award of execution on the judgment, and is a proceeding necessary to complete the jurisdiction exercised by rendering the judgment." The result is that in the circuit courts of the United States there must be a judgment for the recovery of money before there can be a mandamus to levy a tax to pay it, and that the mandamus is only a form of executing the judgment. It was in obedience to this requirement that the plaintiff sought and obtained his judgment on the drain warrants. It was a judgment against the county for the recovery of the money, and the recovery of the money was "not otherwise secured" than by the judgment itself. There was no property in the custody of the court, and none under any lien which this proceeding was brought to enforce and foreclose. For these reasons we think the judgment was in the class referred to in rule 29 of the supreme court, in which the bond required to make the writ of error a supersedeas must be conditioned upon the payment of the amount of the judgment.

But it is vigorously pressed upon us that the debt for which the judgment was rendered was not the debt of the county, but that of the owners of certain lands in three townships, which were benefited by two ditches. It is true that the county did not obligate itself in terms to pay these warrants, though they were drawn and approved by its officers; but the effect of Mr. Justice Brown's opinion and judgment in the original suit (43 Fed. 350) was that by law it was the duty of the county to collect the tax upon these lands, and to pay the warrants out of the fund thus created; that, as there was no other corporate or quasi corporate body to represent the persons whose lands were benefited, the county was evidently intended by the law to be their representative, and, therefore, that the county was the proper defendant, as trustee and representative of the real debtors, against which a judgment might be entered as the essential foundation for a mandamus proceeding to enforce the collection of the proper taxes. Mr. Justice Brown followed in his

opinion the reasoning and conclusion of Judge Dillon in the case of Jordan v. Cass Co., Fed. Cas. No. 7,517, where there is a full consideration of the question of the propriety of entering a judgment against a county in the name of which bonds had been issued for one of its townships. The township was the real debtor, but it was not a corporation. The debt could only be paid by taxes levied upon the lands of the township. Judge Dillon was of opinion that a judgment ought to be rendered against the county, and that even within common-law precedents it could be framed so as to effectuate the rights of the parties. He said:

"But the common-law adjudications show that the judgment may be molded so as to conform to the rights of the parties under the law, and by analogy support the view we. take. Thus in Peck v. Jenness, 7 How. 612, where the plaintiff attached goods of his debtor before the latter was proceeded against in bankruptcy, and where, pending the action, the debtor was discharged, the supreme court of the United States held that it was competent and proper for the court to render a judgment, notwithstanding the discharge, for amount of the debt,·damages, and costs, 'to be levied only of the goods of the defendant attached on plaintiff's writ, and not otherwise.' 'The books,' says Mr. Justice Grier in this case, 'are full of precedents for such a judgment.' When an administrator pleads plene administravit, the plaintiff may admit the plea, and take judgment of assets, quando acciderint. When the defendant pleads a discharge of his person under an insolvent law, the plaintiff may confess the plea, and have judgment to be levied only of defendant's future effect. Peck v. Jenness, 7 How. 623. So, subsequently, the supreme court held that when contracts made payable in·coin are sued upon, judgments may be entered for coined dollars, and parts of dollars. Bronson v. Rodes, 7 Wall. 229. Upon the whole, our judgment is that the action is well brought against the county; that the county may make defense, but, if the plaintiff shall be found entitled to recover, he may have judgment against the county for his debts, damages, and costs to be enforced, if necessary, by mandamus against the county court, or the judges thereof, to compel them to levy and collect a special tax according to the statute in such case provided and not otherwise. Demurrer overruled."

The reasoning of Judge Dillon in this case met with the unqualified approval of the supreme court in County of Cass v. Johnston, 95 U. S. 360, and has been followed by this court in Breckinridge Co. v. McCracken, 22 U. S. App. 115, 127, 9 C. C. A. 442, and 61 Fed. 191. The affirmation of Mr. Justice Brown's judgment in this case shows the concurrence of the supreme court in his view that the same principle was applicable to the drain warrants in this case, which Judge Dillon had applied in respect of bonds issued for township purposes in the name of the county. The theory on which the judgment against the county in such cases is entered is that the county is the trustee to apply a particular fund, when collected, to the payment of the indebtedness; and therefore that a judgment may properly be rendered against the county, to be made from the particular fund created by the levy of taxes on certain described lands. But we do not see· how this limitation upon enforcing the judgment renders it any less a judgment for the recovery of money. A judgment against an executor, though it is de bonis testatoris, is none the less a judgment for the recovery of money. The fact that the judgment does not involve the personal liability of the defendant cannot affect its character as a money judgment. That is a

money judgment which adjudges a defendant either as an individual or in a representative capacity absolutely liable to pay a sum certain to the plaintiff, and awards execution therefor, and which may be fully satisfied by the defendant by paying into court the amount adjudged, with interest and costs. Thus tested, the original judgment rendered against Gratiot county was a money judgment, and it is not material that its enforcement was limited to process by taxation against certain lands in the county. It is true that Mr. Justice Brown, in his opinion, says, in effect, that such a judgment was practically only a formal means of procuring mandamus proceedings, and that the supreme court in Davenport v. County of Dodge, 105 U. S. 237, uses similar language; but this cannot, and was not intended to, change the exact legal character and effect of the judgment which was rendered. Certainly Mr. Justice Brown did not so intend, for he took the bond sued on in this case. It was not a judgment for a mandamus, because the circuit court is without jurisdiction to render such judgment. It is a judgment for money, which, not being enforceable except by mandamus, justifies the resort, under section 716, to this ancillary writ by way of executing the judgment for money. Therefore Mr. Justice Brown properly followed rule 29 of the supreme court when he required a bond to supersede the judgment, in which the obligors bound themselves to pay the judgment should it be affirmed.

It was not "otherwise secured," within the meaning of that rule. "Otherwise" means otherwise than by mere force of the judgment. In Ohio, a judgment is a lien on the real estate of the defendant for one year after its rendition. It will hardly be contended that a defendant in a federal court in Ohio could, under rule 29, stay a judgment against him for money only because he happens to be the owner of land in Ohio. The meaning of "otherwise secured" is sufficiently explained by that language in the rule which points out the instances in which a bond for the payment of a judgment is not required. They are all cases in which the court has, by reason of a lien on property secured to plaintiff otherwise than by the judgment or by reason of actual custody of property liable to satisfy the claim asserted, the means of making the claim of the plaintiff by subjecting specific property. In the judgment in this case it may be that the taxes, after they shall be levied, will be a lien on the lands described in the judgment; but no taxes are yet levied, and no lien can exist before the levy. The judgment, therefore, is secured only in the same sense in which every judgment is secured, namely, that when execution is levied on the land of the debtor it may be sold to pay the claim.

It is said that to exact and to enforce this bond as it is written is to compel the sureties to pay what the principal in the bond could not be compelled to pay, and that it is inequitable, and beyond the power of the circuit court as the condition of a review of its judgment and of a stay of execution to require that sureties shall be furnished to do that which exceeds the liability of the principal under the judgment as rendered. It may be conceded that no bond which compels the surety to do more than is adjudged against the princi-

pal would be lawful. Babbitt v. Finn,.101 U. S. 7; Davis v. Patrick, 12 U. S. App. 629, 634, 6 C. C. A. 632, and 57 Fed. 909. But the bond here is not open to such an objection. The county did not sign the bond in suit, but that, it is conceded, does not affect its validity. Brockett v. Brockett, 2 How. 238. But, suppose that it had signed as principal? Its liability would have been the same on the bond as on the judgment. It would have signed as principal in the same representative capacity in which judgment was rendered against it, and it would then have been bound as well by the bond as by the judgment to pay the judgment out of the particular fund raised by specific taxation, if it had such a fund, and that is all. The sureties, however, sign in no representative capacity. They contract as individuals that the principal shall perform the bond at all events, and, if he does not do so, whether from lack of trust funds or otherwise, they must do so themselves. If an executor superseded a judgment against him de bonis testatoris, could a surety be heard to say, when the condition was broken by an affirmance in the appellate court, that the executor had no goods of his testator, and therefore the sureties on the supersedeas bond were released from obligation to pay the judgment? Such a plea would be of no more avail than if the surety of an individual judgment debtor should seek to escape liability on the ground that the debtor was without funds.

Two authorities are cited to show that in cases like this the only proper bond under the statute is for costs and nominal damages. The first is U. S. v. Mayor, etc., of City of New Orleans, 8 Fed. 112. That was a decision by Judge Pardee in fixing a supersedeas bond for a writ of error to an order granting a mandamus directed against city officers commanding them to levy a tax. It was not a judgment for the recovery of money. It could only be satisfied by the levy of the tax. The mandamus had doubtless been preceded by a judgment for money, but it was the order of mandamus which was to be made the subject of review on error, and not the judgment. The other authority cited is an abstract and memorandum of some remarks made by Judge Treat in the case of Fourth Nat. Bank v. Franklin Co., reported in 10 Cent. Law J. 193. Judge Treat was considering the amount of a bond necessary to supersede a writ of mandamus, and on the authority of Justice Miller he said that in such a case a bond, not for the amount of the judgment, but only for costs and damages, was needed. He said:

"If they go up on the judgment, they would have to give a bond equal in amount to the recovery had on the judgment, yet if they go up, not on the judgment, but on questions arising on the alternative or peremptory writs of mandamus, as to the power of the court, etc., a bond sufficient to meet that question is all that is needed."

It is manifest that this case, instead of supporting the contention for the plaintiff in error, is directly in conflict with it.

The case of Supervisors v. Kennicott, 103 U. S. 554, is also relied on, but it is plainly distinguishable from the case at bar. There a county had, under an enabling act of the legislature, mortgaged its swamp lands to secure the bonds of a railroad, without entering in-

to any obligation as surety or otherwise for the debt. A decree was entered finding the amount due from the railroad company on the bonds, and directing a sale of the mortgaged lands to pay the same. The county gave a bond conditioned according to law in $40,000. It was held that this did not render the sureties liable to pay the deficiency remaining after applying the proceeds of sale or interest. As the decree in the case was not a judgment for money, but only a decree for sale to pay an adjudged sum in which the property followed the decree, it was manifestly not within the first class of judgments described in rule 29 as "for the recovery of money not otherwise secured," but was exactly within the second class of judg-, ments and decrees therein mentioned.

There remains but one more objection to the judgment below to consider. It is said that no judgment could be taken until after the county had had time to make the levy on the lands to be, taxed, and until October following the July in which the suit was brought no levy could be made under the law of Michigan. The obligee in the bond was under no duty to wait until then. The condition of the bond was broken when the supreme court affirmed the judgment, because then it was finally settled that the plaintiff in error had not prosecuted its appeal to effect. Babbitt v. Finn, 101 U. S. 7; Davis v. Patrick, 12 U. S. App. 629, 6 C. C. A. 632, and 57 Fed. 909.

The judgment of the circuit court is affirmed, with costs.