CUSHMAN et al. v. WARREN–SCHARF ASPHALT PAVING CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

No. 2063.

1. JUDGMENT ⟨key⟩675—PERSONS CONCLUDED—PRIVIES—DEFENDING SUIT IN NAME OF ANOTHER.

One who, openly and to the knowledge of the opposing party, defends a suit in the name of another to protect his own right or interest, is as much bound by the judgment as he would be if he had been a party to the record.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1190, 1191, 1194; Dec. Dig. ⟨key⟩675.]

2. MANDAMUS ⟨key⟩114—LEVY OF TAXES—JURISDICTION OF FEDERAL COURT—ACTION AGAINST MUNICIPAL CORPORATION.

A federal court has jurisdiction of an action against a municipal corporation on an obligation payable from the proceeds of a special assessment, which the defendant has failed or refused to levy, although it was its duty to do so, and may award a writ of mandamus to compel the levy, even though the defendant is not itself liable for the debt for which plaintiff prays judgment against it.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 241, 244–246, 248; Dec. Dig. ⟨key⟩114.]

3. JUDGMENT ⟨key⟩675—CONCLUSIVENESS OF ADJUDICATION.

Complainant, which had performed contracts for paving made with a city, brought an action at law in a federal court against the city to recover damages because of its failure and refusal to perform its statutory duty by levying a special assessment on property to pay for the improvement. The action was defended by the owners of the property subject to the assessment, who had given bond to save the city harmless, and who set up in defense that the paving contracts were illegal. Under the state statute the city was exempt from liability for the contract price of the work done; the proceeds of the special assessment being the sole fund from which it was payable. The court rendered a judgment awarding a mandamus against the city requiring it to levy the special assessment, which was done, and, the assessment not having been paid, complainant brought the present suit to enforce the statutory lien therefor. *Held*, that the judgment in the prior action in the form in which it was rendered was within the recognized jurisdiction of the federal court, and was binding on defendants, and conclusive against them of the validity of contracts under which the assessment was made.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1190, 1191, 1194; Dec. Dig. ⟨key⟩675.]

4. CORPORATIONS ⟨key⟩630—VOLUNTARY DISSOLUTION—CAPACITY TO SUE AFTER DISSOLUTION.

Under a state statute providing that a corporation, although dissolved by proceedings in court for that purpose, may nevertheless sue and be sued until its business affairs are fully wound up, such a corporation may maintain an action in a federal court in another state to collect a debt due it therein.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. ⟨key⟩630.]

5. COURTS ⟨key⟩264—JURISDICTION OF FEDERAL COURTS—ANCILLARY SUITS.

Where, pursuant to a mandamus awarded by a federal court, a city has levied a special assessment to pay a debt due the plaintiff, a subsequent suit to enforce payment of the assessment by property owners is

ancillary to the prior action, based on the judgment therein, and is within the jurisdiction of the court, without regard to the amount involved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec. Dig. ☞264.]

6. JUDGMENT ☞519—PROCEEDINGS TO ENFORCE—ISSUES.

In an ancillary suit, the purpose of which is to enforce a prior judgment at law jurisdictionally valid and free from fraud, the court cannot review such judgment for errors.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 963; Dec. Dig. ☞519.]

7. MUNICIPAL CORPORATIONS ☞456 — IMPROVEMENT OF STREETS — SPECIAL ASSESSMENT.

In making a special assessment for the cost of paving a street, a single assessment against one lot owned by two persons in common does not violate the rule that each tract or lot must be assessed separately.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1094–1099; Dec. Dig. ☞456.]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit in equity by the Warren-Scharf Asphalt Paving Company against Carrie Cushman, Offley W. Leeds, Eva Leeds Cole, Alfred W. Leeds, Kate Leeds, Julia A. Taylor, Samuel J. Taylor and Frank R. Leeds, as executors of Minnie Leeds, deceased, Harriet Huffman, Robert R. Zoon, Flora Zoon, Charles P. Zoon, Emily Kuhn, Louise Kuhn, John H. Kuhn, John C. Dabbert, the Root Manufacturing Company, Frank Vreeland, Alice M. Lock, Gilbert L. Lock, Arthur L. Leeds, and Sophia Johnson. Decree for complainant, and defendants appeal. Affirmed.

In 1899 appellee, a New York corporation, contracted with the city of Michigan City, Ind., to pave three certain streets. The work was finished and accepted in 1900. In 1901 the city levied a special assessment to pay for it. Appellants or their predecessors in title having refused to pay, appellee sought foreclosure of its alleged liens in the state court. In 1908, on final appeal, the paving contracts were held void for lack of proper advertisement and the assessments were annulled.

In 1901 the law then in force governing such improvements was repealed, and in 1905 the entire subject-matter was regulated by a new enactment. In 1909 an act purporting to amend the law of 1905 was adopted, which permitted cities to remedy irregularities when assessments should have been held void on account of defects or irregularities in the preliminary steps. This amendment was not in express terms limited to assessments made under the act of 1905. Thereafter, on appellee's petition, the city proceeded regularly as if a new improvement were to be made, contracted with appellee to do the work at the old price, and at once accepted the work long theretofore finished as a compliance with the new contracts. New assessments identical with the old were spread, and due notice of a hearing was given to the property owners. Appellants protested that the proceedings were without legal authority, and, on their agreement to indemnify and save harmless the city from any costs or damages which might result from a refusal to levy the assessments, the board of public works, despite appellee's demand, declined to take any further steps.

Thereupon, in 1910, appellee sued the city of Michigan City in the United States Circuit Court for the District of Indiana. The total amount demanded was $6,043.33, the amount of the original unpaid assessments, with interest from the date of levy thereof. The complaint in three counts, one as to each street and contract, set up the history of the transactions in detail, conclud-

ing each count (except as to the amount of damages) as follows: "Plaintiff further says that, by reason of the failure and refusal of the defendant to act in the premises, no fund has been raised by defendant wherewith to pay plaintiff the contract price of said improvement, and the plaintiff has thereby been deprived of the use of the money representing such contract price. Plaintiff further says that by reason of the failure and refusal of defendant to cause assessments to be levied, thereby creating a fund wherewith to pay this plaintiff the contract price of said improvement, defendant has failed to discharge a duty owing to this plaintiff, and has become liable to this plaintiff in damages; that plaintiff has been damaged to the extent of a sum equal to the assessments which defendant should have levied for plaintiff's benefit, together with interest thereon. Whereupon plaintiff prays for damages against defendant in the sum of $4,000, and for such further and additional relief in the premises as to the court may seem proper."

The demurrer, later overruled by the court, and then the answer of the city, were filed by attorneys who were employed by appellants, and who, with the city's consent, had complete control and management of the defense. The answer set up: First, that the later contracts differed from the originals in certain specified particulars, and were therefore void; second, that, because the work had long before been completed, the curative proceedings and the contracts based thereon were invalid; third, that the state court decisions adjudging the original proceedings void, and the enactment, while those suits were pending, of the act of 1905, rendered the later proceedings void and of no effect.

A demurrer to this answer was sustained, and thereupon, the defendants therein declining to answer further, on motion of the plaintiff therein for judgment for the amount of the original unpaid assessments, with interest from January 17, 1901, the date of the levy thereof, the court, in February, 1911, entered a judgment which, after reciting defendant's election to stand upon its answer, proceeds as follows: "And the plaintiff having moved for judgment for defendant's failure so to plead or answer further, said motion of the plaintiff is now sustained in part as follows: 'The court, being duly advised in the premises, does hereby finally order and adjudge that plaintiff have and recover from the defendant the sum of $6,043.33, being the amount for which special assessments should be levied by the defendant without interest; said judgment to be enforceable only by a writ of mandamus against the defendant to compel the defendant to levy said assessments, and to pay over to the plaintiff the amount collected thereon. With respect to so much of plaintiff's motion for judgment as prays for interest upon the amount above named, the same is overruled. It is further ordered and adjudged that plaintiff have and recover from the defendant its costs in this proceeding, all of which is finally ordered and adjudged.' "

No attempt has ever been made to have this judgment reversed. Thereafter, on due notice of a hearing, at which none of appellants appeared, final assessments were levied, and, as they remained unpaid after due notice given by appellee, a bill in equity was filed in 1913, in the District Court of the United States for the District of Indiana, by appellees against appellants and two other property owners, who have not joined in this appeal.

The bill recited that appellee took steps in 1904 to effect a voluntary dissolution, became dissolved, but under the laws of New York continued its corporate existence to transact incomplete business and to wind up. It then sets up the history of the transactions as hereinabove set forth, alleged its ownership of the several unpaid assessments, and prayed for such relief as it might be entitled to, and, for the purpose of giving complete effect to the judgment of February, 1911, that defendants be decreed to pay the assessments to the city for appellee, or to appellee, and, upon failure, that the liens of the assessments be foreclosed. After a motion to dismiss had been overruled, answers were filed practically admitting most of the allegations of the bill, but denying knowledge as to some of them. It appeared from the answer that the amount involved in the assessment of each piece of property and of the property of each defendant was less than $3,000. A decree was entered in accordance with the prayer of the bill. The cause is before us on an appeal from this decree.

William A. McVey, of La Porte, Ind., and George T. Buckingham, of Chicago, Ill., for appellants.

Morris M. Townley, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). It is unnecessary for us to consider either the applicability of the act of 1909 to special assessment proceedings begun under acts other than that of 1905, its constitutionality, if given retroactive effect, or the unconstitutionality of the foreign corporation act of 1879 (Burns' R. S. 1908, § 4105), in view of the conclusion reached, that the judgment of the United States Circuit Court, affirming the right and duty of the city to levy assessments, was, under the pleadings in the case, within its jurisdictional power, and that it is therefore res adjudicata as to those questions, all of which were necessarily litigated in and determined thereby in favor of appellee, both as against the city, the party defendant therein, and as against appellants as privies thereto. Bradley Co. v. Eagle Co., 57 Fed. 980, 6 C. C. A. 661.

[1] First. While appellants assert that they were neither parties nor privies to the case in the Circuit Court, the conceded facts demonstrate that they were privies thereto, inasmuch as the entire defense was conducted by them, with the city's consent, at their own request, and in their sole interest, as the parties eventually and directly obligated to pay any judgment that might be rendered against the city.

"The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record. Lovejoy v. Murray, 3 Wall. 1 [18 L. Ed. 129]." Per White, C. J., in Souffront v. Compagnie des Sucreries, 217 U. S. 475, 487, 30 Sup. Ct. 608, 612 (54 L. Ed. 846).

[2] Second. Since the case of Jordan v. Cass County, 3 Dill. 185, Fed. Cas. No. 7,517, and for reasons fully stated by Judge Taft in Fuller v. Aylesworth, 75 Fed. 694, 21 C. C. A. 505 (C. C. A., 6th Circuit), it is settled law that, though the federal courts are without jurisdiction to entertain an original mandamus suit, they have jurisdiction in an action at law against a public corporation to render a judgment in the very form followed by the Circuit Court, on bonds and drainage orders issued by or on behalf of a county, but payable, under the law of the state, solely from taxes or special assessments to be levied against a limited district within the county, and that, too, though by statute a mandamus proceeding is the only remedy available in the state courts.

While, in the reported cases, such actions have been formally based upon a debt evidenced by a written contractual obligation under which the county, usually, but not always, appears as the nominal, though never as the real, obligor, in substance, as the opinions expressly state, they are merely substitutes for original mandamus, devised and sanctioned to enable the federal courts to exercise a proper jurisdiction,

and, as such, they are based upon the failure of the defendant to perform its statutory obligation of levying the taxes or assessments and paying over the fund to the creditor. Indeed, in Aylesworth v. Gratiot County (C. C.) 43 Fed. 350, in which the action was, in form, on orders issued for drain work payable, like the work of appellee, only through special assessment, Mr. Justice (then Judge) Brown said:

"My only doubt in this connection is whether the declaration should not count upon the failure of the board of supervisors to take the proper proceedings for the levy and collection of this tax. The state courts have repeatedly held that no action as for a debt will lie against the municipality upon these warrants."

[3] The complaint on which the instant judgment was rendered was expressly based upon the obligation of the city to levy the special assessment and pay over the fund; if it had concluded with the allegation that the defendant thereby became indebted to the plaintiff to the amount of such unpaid assessments and had prayed a judgment therefor, then clearly, within the precedents, no judgment other than in the form adopted by the Circuit Court would have been valid and proper.

That the plaintiff asserted in his complaint a failure of the defendant to discharge a duty owing to the plaintiff, and its liability in damages because of the neglect of its statutory obligations, and in the prayer asked for damages, does not limit the jurisdictional power of the court to render such a judgment as the facts recited in the complaint would justify. Especially is this so when, as in this case, because of the statutory provisions exempting the city from liability and declaring the special assessment fund the sole source of payment, a general judgment against the city either in debt or in damages would have been erroneous (City of Pontiac v. Talbot Paving Co., 94 Fed. 65, 36 C. C. A. 88, 48 L. R. A. 326; Id., 96 Fed. 679, 37 C. C. A. 556), and when, in addition to the specific prayer for damages, the plaintiff asked for "such other and further relief in the premises as to the court may seem proper."

Whether regarded as an action in tort or as an action in contract, the federal court clearly had jurisdiction of the subject-matter. A general judgment against the city, though erroneous, would have been within its jurisdictional power. And while a judgment or decree which is beyond the power of the court to render in any case, or so much thereof as is entirely without the scope, not merely of the specific prayer, but of the substance, of the pleadings, is void, even on collateral attack (King v. Doerr, 145 App. Div. 177, 129 N. Y. Supp. 986, affirmed Same v. Beers, 203 N. Y. 559, 96 N. E. 1117), the instant judgment, with its limitation based upon the facts of the case pleaded, though departing from the specific relief prayed for, was clearly within the jurisdictional power of the court, and is therefore binding upon the parties in this case (Insley v. United States, 150 U. S. 512, 14 Sup. Ct. 158, 37 L. Ed. 1163). In the very case in which such a limited judgment was first upheld (County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416), the plaintiff seems to have demanded a general judgment.

[4] Third. The New York statute, pursuant to which appellee's dissolution proceedings were instituted, provides that after dissolution

"said corporation shall nevertheless continue in existence for the purpose of collecting its assets and may sue and be sued until its business and affairs are fully adjusted and wound up." In other words, despite the proceedings, its corporate existence is not fully extinguished; its capacity to sue and be sued is preserved. It remains a citizen of the state of its creation; it may sue therein (City of New York v. Warren-Scharf Asphalt Paving Co., 149 App. Div. 633, 134 N. Y. Supp. 439), and no reason is apparent why it may not also sue, as a foreign corporation, in the federal courts. Sinnott v. Hanan, 156 App. Div. 323, 141 N. Y. Supp. 505, involving the construction of the New Jersey statute, is not in point.

[5] Fourth. The present proceeding in equity was purely ancillary, for the purpose of effectuating the judgment at law through foreclosure of the liens on appellants' property unless payments were made. The question of jurisdictional amount is therefore not involved.

H. C. Cook Co. v. Beecher, 217 U. S. 497, 30 Sup. Ct. 601, 54 L. Ed. 855, is in no way in conflict with Preston v. Calloway, 183 Fed. 19, 105 C. C. A. 311 (C. C. A., 6th Circuit). In the former case a suit against directors of a corporation to enforce their liability created by state statute for certain debts of the corporation was held not to be ancillary to a judgment against the corporation. In no proper sense was this a suit to enforce the judgment merely because a judgment against the corporation was a condition precedent to the creation of the directors' independent statutory obligation.

In the present case, however, as in the Calloway Case, "the object of the suit was to enforce payment of the tax in order to obtain satisfaction to that extent of the judgment theretofore rendered on the law side," not to enforce an entirely independent liability. The assessments and liens thereby created constituted the sole fund to which the city or contractor could resort for the payment of the judgment which, while it was in form the debt of the city, in substance was the obligation of these appellants as owners of the assessed property.

[6] Fifth. The ancillary proceeding was based upon the judgment itself and the obligation thereby declared and created. The recital in the bill of complaint of the facts leading up to the judgment does not make it an original suit in equity based upon the alleged pre-existing obligation, as in Brownsville v. Loague, 129 U. S. 493, 9 Sup. Ct. 327, 32 L. Ed. 780. And while a court of equity, when called upon to aid in executing its own former consent decree, may decline to treat it as res adjudicata, and may therefore refuse to deem it binding in respect to the relief to be granted on the new bill (Lawrence Mfg. Co. v. Janesville Cotton Mills, 138 U. S. 553, 11 Sup. Ct. 402, 34 L. Ed. 1005), it has no power, either in an original or ancillary proceeding, to go behind a judgment at law, jurisdictionally valid and free from fraud, in search of errors, however gross. Tilton v. Cofield, 93 U. S. 163, 167, 23 L. Ed. 858; New Orleans v. Fisher, 180 U. S. 185, 21 Sup. Ct. 347, 45 L. Ed. 485.

[7] Sixth. While defenses against the specific assessments on the several properties of the appellants, based on defects in the proceedings subsequent to the entry of the judgment in the Circuit Court, are

not concluded by the judgment itself, nevertheless only jurisdictional defects can be urged in this suit. Appellants defaulted in the opportunity to attack mere errors by their failure to appear at the hearing at which the preliminary assessment roll was confirmed.

Moreover, a single assessment against one lot owned by two persons in common does not violate the rule that each tract or lot must be assessed separately. And, by the express provisions of the statute a mistake in the name of the owner of the land does not vitiate the assessment. In this case, each owner had due notice of all proceedings.

Decree affirmed.